## WYATT *v.* HENDRIX.

1. In a proceeding under the Civil Code, §§ 807 et seq., to condemn a private way over the lands of another person, in order to entitle the applicant to relief it must appear that the way sought by him is absolutely indispensable as a means of reaching his property.

2. Even where the necessity for such way exists, the applicant is not entitled to choose his route, where the landowner has tendered him a way reasonably convenient to both parties.

NOVEMBER 17, 1916.

Certiorari. Before Judge Patterson. Cherokee superior court. September 24, 1915.

*E. W. Coleman,* for plaintiff in error.

*W. D. Mills* and *J. Z. Foster,* contra.

HILL, J. W. H. Hendrix made an application to the ordinary of Cherokee county, to condemn and lay out a private way over the land of J. A. Wyatt. The ordinary granted the application, and appointed commissioners to lay out the road. Wyatt carried the case by certiorari to the superior court, and upon the hearing the trial judge dismissed the certiorari, and Wyatt excepted.

To authorize the condemnation of a right of way over the land of another person, a necessity for such way must exist. In *Chattanooga &c. R. Co.* v. *Philpot,* 112 *Ga.* 153 (37 S. E. 181), it was held: " 'Cases of necessity,' contemplated in that provision of the constitution which declares that 'in cases of necessity' private ways may be granted upon just compensation being first paid, do not arise except where the way sought to be laid out is absolutely indispensable to the applicant as a means of reaching his property. If there is in existence a way suitable for all purposes for which the property is to be used, a case of necessity does not arise, even though such way may be less convenient than the one proposed." To the same effect is the ruling in the case of *Gaines* v. *Lunsford,* 120 *Ga.* 370 (47 S. E. 967, 102 Am. St. R. 109). From the evidence adduced on the hearing before the ordinary it appears that the applicant was seeking to obtain an outlet through the lands of Wyatt to a certain public road. The only evidence introduced in behalf of the applicant was that given by himself. His testimony in full, as set out in the petition for certiorari, was as follows: "I am the plaintiff. I consider I have no road to get to my farm. I own lot of land No. 666 that lies east and broadside of lot 665 that is owned by J. A. Wyatt. I own three acres in the southeast corner of lot 665; my part is 140 yards running north from southeast corner, and 105 yards running west from that corner. The road now runs through this 3 acres and comes to Wyatt line about the middle of this 3-acre north line. I could go over my own land by going to the east of the house occupied

by Bagwell, or I could go east on the three acres to the line between lots 666 and 665. I do not want to go that way. Mr. Wyatt has cut out a way on the line between lots 665 and 666, and I could go that way. I do not want to go that way yet. I am not prepared yet to go that way. It would be as good road that way as across the lands of Mr. Wyatt. I could go on my land to the northwest corner of lot 666, and it would not be much over 30 yards out to the road. Wyatt has already cut out a road in line of lots 665 and 666. I do not travel it." The ordinary in his answer to the certiorari states that the evidence of the plaintiff is correctly set forth in the petition, but that in addition he swore "that he had [a] road to and from his farm until J. A. Wyatt obstructed said road. He petitioned the ordinary to have said obstructions removed, which was refused. Hendrix admits that he could build road where Wyatt offers right of way, but it would be farther and a rough place to build road, and thinks a better road could be made another way and not damage any one." The evidence on the part of Wyatt showed, that the road the applicant desired opened would extend from applicant's line 235 yards to the road he wished to intersect, and would cut off of defendant's line 5 or 6 acres, which would be left of little value, as it would make a strip only 50 to 75 yards wide; that the applicant could run a road over his own land to the corner of lot 666, which would be shorter and almost level, while the one he was trying to open over the land of applicant would be rougher and steeper, and from this corner of applicant's land the road would have to be run only 30 yards across the land of defendant in order to reach the public road; and that defendant offered to give him a right of way over his land this distance of 30 yards.

The applicant wholly failed to make out a case entitling him to condemn a way across the lands of the defendant. Aside from the failure of the evidence clearly to show that any necessity for a way over any route existed, it is undisputed that the applicant could make a road over his own land for the greater part of the distance to the public road, and that the defendant tendered to him a way over his land for the remaining distance. In *Russell v. Napier*, 82 *Ga.* 770 (9 S. E. 746), it was ruled: "One is not allowed to claim a road over another's land as a way of necessity, when he has or can have such a way over his own." If it be said

10

that this principle is not applicable because in this case the applicant could not make a way the entire distance over his own land, it becomes so when the defendant has voluntarily tendered a way over his land by which the applicant could go the remaining distance to the road. In *Charleston &c. Ry. Co.* v. *Fleming,* 119 *Ga.* 995-996 (47 S. E. 541), Evans, P. J., said: "The right of exclusive possession is one of the attributes of title to realty. This exclusiveness can not be restricted except in those instances authorized by law. One exception to the general rule of exclusive possession is where the owner of land, having no means of ingress to or egress from his own premises except by going over the land of another, will be permitted to cross the abutting land of a third person, under certain circumstances. To acquire such a right, the necessity must be shown not only to cross the land of the adjoining proprietor, but also that the selected place of crossing is the most suitable and accessible means of outlet, determined relatively to the servient as well as the dominant tenement. The owner of the servient tenement may assign a way reasonably convenient to both parties; and if he fails to do so, the person entitled to the way may select it." The applicant having failed to establish his right to the way he proposed to condemn, the judgment of the ordinary was contrary to the law and the evidence, and it was error to overrule the certiorari.

*Judgment reversed. All the Justices concur.*