SHEDD ET AL. *v.* NORTHERN INDIANA PUBLIC
SERVICE COMPANY.

[No. 25,605.   Filed January 4, 1934.]

*Louis B. Ewbank* and *Malcolm Mecartney,* for appellants.

*Crumpacker & Freidrich, Cooke, Sullivan & Ricks* and *John C. Lawyer,* for appellee.

HUGHES, J.—The appellee filed suit in the Lake Circuit Court to condemn a right of way in Lake County for its electrical transmission and distribution lines to deliver electric current to the public in Indiana. After hearing evidence the court appointed appraisers and from this interlocutory order the appellants have appealed.

The court, upon proper request, made a special finding of facts and stated conclusions of law thereon.

The complaint alleges that plaintiff is a public utility corporation; that it has charter power to engage, and is engaged, in carrying on the general business of the manufacture, transmission, distribution, purchase, and sale of electric current and gas to towns and cities and to the public generally in northern Indiana for heating, lighting, and power purposes and other business incident thereto; that the plaintiff proposes to construct, and is engaged in constructing, an electrical transmission line and system on a right of way, the west end of which begins at a point on the Illinois-Indiana state line in Lake County, Indiana, and the general route runs in an easterly and northeasterly direction through the counties of Lake, Porter, and LaPorte, Indiana; the real estate desired to be appropriated is described. The complaint further alleges that plaintiff intends to use the property to be appropriated for a right of way for the erection, construction, maintenance, operation, repair, and renewal of its electrical transmission line for the transmission, delivery, and distribution of electrical current to towns and cities and to the public in general for heating, lighting, and power purposes.

The appellant's assignment of errors is as follows:

1. The court erred in sustaining appellee's demurrer to objections numbered 1 and 9 of the appellants.

2. The court erred in each of its conclusions of law stated upon the special finding of facts made and filed by the court.

3. The court erred in overruling the motion of appellants for a venire de novo.

4. The court erred in overruling the motion of appellants for a new trial.

5. The court erred in overruling the motion of appellants in arrest of judgment.

6. The court erred in overruling each of the separate and several objections of the appellants numbered 1 to 12, both inclusive, and appointing appraisers.

The motion for a new trial assigns two reasons:

1. The finding of the court is not sustained by sufficient evidence.

2. The finding of the court is contrary to law.

Twelve paragraphs of separate and several objections were filed by the defendants. Under objection one, a specific issue of law as to the alleged insufficiency of the amended complaint was tendered and issues of fact were tendered as to plaintiff's right to appropriate and condemn.

Under objection one it was stated that: (1) the amended complaint failed to set forth the location, general route, width and termini of the right of way of which the lands sought to be appropriated constitute a part, and (2) the use which plaintiff intends to make of the property sought to be appropriated.

Objection 2: Whether or not the lands are being taken only to provide conservation of capital investment and maintenance cost, savings in the cost of electrical energy, economies in operation and conservation of fuel on behalf of plaintiff and two Illinois corporations.

Objection 3: Whether or not the west half of the land is being taken for the construction of a 137,000 volt transmission line over which to carry into the state of Illinois, for use by corporations of that state, electrical energy generated in Indiana by the State Line Generating Company, a corporation engaged in the private business of wholesaling electrical current solely to two Indiana and two Illinois corporations.

Objection 4: Whether or not one of the purposes for which plaintiff seeks to appropriate lands of appellants lying within the easterly 150-foot right of way is to enable another Indiana corporation to purchase

wholesale quantities of electricity to be generated by the State Line Generating Company.

Objection 5: Whether or not plaintiff seeks to condemn these lands for the use and benefit of named corporations other than itself.

Objection 6: Whether or not plaintiff seeks to appropriate the west half of the land to provide facilities for transmitting electrical energy across the state line for interstate commerce exclusively.

Objection 7: Whether or not the use on its own behalf for which plaintiff is seeking to appropriate the lands is to plaintiff to purchase electrical current, generated by another company.

Objection 8: Whether or not the lands are being taken in order that another company may transmit.electrical energy thereover.

Objection 9: Whether or not the proposed transmission lines will lead only into the electric switches in the State Line Generating Company's plant, and plaintiff has no agreement with the company for the use of its switching apparatus, and, therefore cannot use the property sought to be taken.

Objection 10: Whether or not plaintiff's existing sources of supply of electrical energy are already ample for all its public uses for many years to come and there is no necessity for the appropriation.

Objection 11: Whether or not any necessity exists for taking more than half the width sought to be appropriated.

Objection 12: Whether or not the uses for which the west 150 feet of the 300-foot strip of defendant's land sought to be taken are to transmit electrical energy generated by another corporation in Indiana across the state line into Illinois, for the use of corporations there, and the use for which the easterly 150 feet of the 300-foot right of way and the 150-foot extension thereof

is sought to be taken is to transmit such energy from the generating plant of another corporation in Indiana to the electric system operated by plaintiff, and the use for which all of such lands are sought to be taken is to transmit electrical energy generated in Illinois across the state line into Indiana and through the manufacturing plant of another company into plaintiff's electrical transmission system, electricity generated by plaintiff in Indiana across the state line into Illinois for sale in mass quantity to purchasing companies that will resell it in that state.

Demurrers were filed to each objection. The demurrer to objection 9 was sustained and overruled as to the others. After hearing evidence the objections were overruled and appraisers were appointed to assess damages.

The appellee claims the right to appropriate appellant's property under any one of three acts. The acts are:

1. An Act authorizing the formation of companies for the manufacture and sale of electricity for heating, lighting and power purposes to towns and cities and to the public, defining their powers. Acts 1907, p. 277, and Acts 1927, p. 724.

2. An Act concerning public utilities; authorizing public utilities, by and with the approval of the Public Service Commission, to appropriate and condemn lands and easements in lands. Acts 1921, p. 216.

3. An Act concerning municipal corporations. Acts 1905, p. 398.

Without considering the last two acts, the appellee has the right to condemn and appropriate under the Act of 1907, as amended by the Act of 1927, providing the appellee has brought itself within the act. *Lowe* v. *Indiana Power Co.* (1925), 197 Ind. 430, 151 N. E. 220.

At the request of appellants the court made a special finding of facts and stated conclusions of law thereon. Appellants excepted to the conclusions of law and by reason thereof they admit for the purpose of the exception, that the facts are correctly found. *Barney* v. *Yazoo Land Co.* (1912), 179 Ind. 337, 101 N. E. 96.

However, if the finding is against the evidence then the remedy is by a motion for a new trial upon the ground that the finding is contrary to the evidence. *Dodge* v. *Pope* (1883), 93 Ind. 480. It is well settled however, that special findings will not be disturbed by the reviewing court if there is evidence to support them. Ewbank's Manual, Sec. 128, *Ilo Oil Co.* v. *Indiana Nat. Gas Co.* (1910), 174 Ind. 635, 92 N. E. 1. So in the instant case if there is evidence to support the special findings the same will not be disturbed.

The appellant states the proposition that the burden is upon appellee to prove its right of condemnation. This statement is correct and unless the appellee has established its right to condemn it cannot sustain this action. It was necessary, as stated by appellant, for the appellee, in order to exercise its right of eminent domain, to prove affirmatively the facts necessary to make out a cause of action and that the proposed taking of the lands or any easement in any such lands is necessary to the carrying out of its objects to manufacture, transmit, distribute, and sell electric current to towns and cities and to the public in general for the purpose of supplying heat, light, and power.

"The power of eminent domain—the right to appropriate for public use the private property of the citizen against his will, has been characterized as a 'very high and dangerous one,' and the appellee cannot exercise

that power for the purpose named in this proceeding unless it is able to show clear legislative authority for so doing." *Kinney* v. *Citizens Water Co.* (1909), 173 Ind. 252, 90 N. E. 129.

The court, in finding number eight, found that "it is reasonably necessary for the plaintiff to take and acquire an easement in all of the lands, lots and premises described in the amended complaint, and use the same for right of way purposes for its electric transmission and distributing lines in furnishing, supplying, transmitting and distributing electric current for light, heat and power purposes to towns, cities, communities and the public in general in territory in northwestern Indiana served by the plaintiff." There is evidence in the record to sustain the above finding and, under the well known rule that where there is evidence to sustain the finding it will not be disturbed on appeal, we must accept the proposition that it was reasonably necessary for the appellee to take and acquire an easement for the purposes set out in the amended complaint. And this extends to the amount and width to be taken alike. If the amount or width is limited by statute then only that can be taken.

The appellant contends that the appellee has in no event power to condemn more than an easement limited to the requirements of the transmission lines proposed to be erected on appellant's lands. We agree with appellants upon this proposition and we find from the amended complaint of appellee that that is all that is asked. The prayer of the complaint as far as pertinent is as follows: "Wherefore, the plaintiff prays . . . and that upon payment of the amount so assessed the plaintiff may enter upon said premises and appropriate the same to said use, and that the ownership of an easement in said right of way for the purpose aforesaid be vested in the plaintiff."

That part of the judgment pertinent here is as follows: ". . . And it is further ordered, adjudged and decreed by the court that the plaintiff Northern Indiana Public Service Company, is entitled to appropriate and condemn said right of way described in the amended complaint herein, and the plaintiff has the right to exercise the power of eminent domain for the use sought and by these proceedings is entitled to appropriate and condemn the said premises described in its amended complaint and above described in the special findings of fact made, signed and filed herein."

In the 7th finding of facts the court found as follows: ". . . it is reasonably necessary for the plaintiff to take and acquire an *easement* in all of the lands, lots and premises described in the amended complaint."

It has been decided by this court and many courts of other states that, "The grant of a right of way is the grant of an easement and implies that the fee remains in the grantor." *Muncie Elec. Light Co.* v. *Joliff* (1915), 59 Ind. App. 349, 109 N. E. 435, and many cases cited.

So when we consider the amended complaint, special findings, and judgment we find that only an easement has been appropriated. Where only an easement has been appropriated the owner of the servient tenement may make any use of the property which does not affect the exercise of the easement.

In the case of *Hoffman* v. *Zollman* (1911), 49 Ind. App. 664, 97 N. E. 1015, the court said: "An easement in lands implies the existence of two tenements—a dominant tenement, to which the right is appurtenant, and a servient tenement, over or in which the right is enjoyed. The owner of the dominant tenement has no rights in the servient tenement except such as are incident to the enjoyment of his easement."

The appellants present the proposition that private property can be taken only for public use. No one can

question this rule of law. The property sought to be appropriated in this proceeding is not for a private use. The evidence when fairly considered shows that it is for a public use. The special finding of facts found that the appropriation was a public use. The evidence supports the findings.

The further proposition is presented that the State of Indiana has no power of eminent domain for uses constituting interstate commerce over which the United States alone has the sovereign right of control and regulation. This proposition standing alone is a correct statement but, when applied to the facts in the instant case, a different situation is presented. The state possesses the power of eminent domain for uses over which it has a sovereign right of control and regulation. The court found that the property sought to be appropriated was for the transmission, delivery and distribution of electrical current to towns, cities, and to the public in general in the territory served by the plaintiff in the state of Indiana for heating, lighting, and power purposes. This finding, as heretofore said, is supported by the evidence.

Does the fact that an electric power plant, such as the one in the instant case, transport and sell its output to other states affect its power of eminent domain?

As stated in the appellant's brief the evidence shows that one of the proposed uses of the land sought to be appropriated is to provide transmission lines for the transmission and sale across the state line to the Commonwealth Edison Company and the Public Service Company of Northern Illinois of electricity planned to be generated by the appellee company in its proposed station at Michigan City, Indiana.

The answer to the foregoing question is well stated in the rule of law given in the case of the *Columbus*

*Water Works* v. *Long* (1898), 121 Ala. 245, 25 So. 702, wherein the court said: "It is equally clear, that this right (eminent domain) is not to be denied where public uses are to be subserved in the state granting condemnation, because in connection therewith public uses in another state may be likewise promoted. While a state will take care to use this power for the benefit of its own people, it will not refuse to exercise it for such purpose, because the inhabitants of neighboring states may incidentally partake of the fruits of its exercise. Such refusal would violate the principles of a just public policy, and the neighborly comity which should exist between states."

In the case of *Washington Water Power Co.* v. *Waters* (1911), 19 Idaho 595, 115 Pac. 682, the court said: "Condemnation could evidently not be had in this state for the purpose alone of serving a public use in another state, but where the use for which the condemnation is sought is a public use in this state, and will serve the citizens of this state—their demands, necessities and industries—the fact that it may incidentally also benefit the citizens and industries of a neighboring state will not defeat the right of condemnation. Again, there must be conceded to the condemning company some discretion as to the extent of the enterprise they will inaugurate, and the amount of investment they will make for the purpose of anticipating the future development of the country, the increased population and multiplied demands for the public service which they are about to inaugurate. If in the meanwhile the company or corporation vested by the state with the power of eminent domain, and charged with a public service, has made a sufficient investment and inaugurated a service which is capable of supplying all the reasonable demands of the citizens of this state, and they find themselves still able to

serve others without impairing or diminishing their service to the people of this state, there can be no legal reason why they should not furnish their service to others, even though they be residents of another state and engaged in business within such jurisdiction. . . . The test must be—is the use a public use within this state, and does it serve the interests of the people of this state? If it does so, the fact that it incidentally or in connection therewith likewise serves the interests of a neighboring state, and the people of such state, will not render it any less a public use, or the service any less a public service, subject to the regulation and control of the state.

"If, after the company shall have procured grounds, rights of way for transmission lines and inaugurated its system, it should use its electrical energy in any other state or sell it to the citizens of another state for use therein, and decline to supply any of the demands of the citizens and industries of this state, then there would be occasion for complaint, and in a proper case the courts, in the exercise of the constitutional power reserved to the state to "regulate and control" the agencies on which the right of eminent domain is conferred, would command and, if necessary, reach out and compel those agencies to direct the exercise of these public uses to the service of the state and its citizens and industries."

We have quoted at length from the above case for the reason that we believe it fully and completely answers the contention of appellants on the proposition discussed.

The question in the instant case is: Is the use a public use within this state, and does it serve the interests of the people of the state? Under the evidence the question must be answered in the affirmative, and the fact that it may incidentally or in connection there-

with likewise serve the interest of a neighboring state, and the people of such state, will not render it any the less a public use, or the service any the less a public service, subject to the regulation and control of the state.

The special finding of facts and the evidence in the instant case show that the use for which the property is taken is a public one and for the use of the citizens of Indiana, and the fact that the people of another state may also be benefited will not defeat the right to condemn.

The general proposition that: "The public use for which property may be taken is a public use within the state from which the power is derived" is not inconsistent with the law as stated in the Idaho case, *supra*.

The contention of appellant that the appellee has no authority to condemn land to reach a source from which to purchase electric current for distribution and resale to its customers can not be sustained.

In 20 C. J., p. 585, Sec. 68, it is said: "A corporation organized to generate and furnish electric power may exercise the right of eminent domain, although it does not render service directly to the public but indirectly through other persons and corporations."

In the case of *State ex rel. Dominick* v. *Superior Ct.* (1909), 52 Wash. 196, 100 Pac. 317, 21 L. R. A. (N. S.) 448, it is said: "Does the fact that the respondent will sell and deliver a portion of its electrical power to third persons and corporations, to be by them used for public and municipal lighting and in the operation of railroads and railways, afford a sufficient reason for denying it the right of eminent domain? We think not. The courts look to the substance rather than to the form, to the end rather than to the means. If in the end the property is devoted to a public use, the mere agency or

instrumentality through which that result is accomplished is a matter of no concern."

In the case of *Nichols* v. *Central Va. Power Co.* (1925), 44 A. L. R. 727, 130 S. E. 764, the court said: "We are therefore of the further opinion that the furnishing of electric power by a duly incorporated company, without reservation of private benefit, to a public service corporation, which in turn furnishes the same electric power to the public, is a public use, and that the corporation is invested with the power of eminent domain."

The test is—is it for a public use? In the instant case the answer must be in the affirmative and therefore the power of eminent domain may be invoked.

In the case of *Lowe* v. *Indiana Power Co., supra,* the court said: "The mere fact that the plaintiff, a public utility corporation, had entered into lawful contracts with other public utility corporations by which it had leased to them portions or all of the output of electricity to be manufactured by its plant, did not affect its right to exercise the power of eminent domain. If it should try to avoid performance of its public duties, performance could be compelled by mandamus. And so long as those duties are performed, it is not material that the electricity manufactured by plaintiff at its plant may be redistributed, sold and furnished to cities and towns and to the public generally through the agency of lessees instead of directly."

The appeal in the instant case was filed May 19, 1928. In April, 1929, Charles B. Shedd, one of the appellants herein, filed a bill for injunction in the Federal Court for the Northern District of Indiana to enjoin the State Line Generating Company from transmitting electrical energy to Illinois utilities over the electrical transmission lines to be built by the appellee herein across the land of appellants by authority of the easement condemned in the suit at bar. The defendant's motion to

dismiss for want of equity was sustained. *Shedd* v. *State Line Generating Co*. (1929), 34 Fed. (2nd) 287.

The case was then appealed to the United States Circuit Court of Appeals and the decision of the District Court affirmed June 5, 1930. *Shedd* v. *State Line Generating Co*. (1930), 42 Fed. (2nd) 505.

Certiorari was denied by the United States Supreme Court November 3, 1930. *Shedd* v. *State Line Generating Co*. (1930), 282 U. S. 884.

Many of the questions raised in the instant case and, in fact, the more important ones, were passed upon by the Federal Court adversely to the contention of the appellants. In the opinion the court set out part of the appellant's complaint, objections, and special finding of facts in the instant case. The case was heard by Evans, Page, and Sparks, Circuit Judges, and the opinion was by Judge Evans. Among other things he said: "An examination of the above quoted proceedings leaves no room for doubt as to the extent of the easement sought and obtained in the Indiana state court. It included the right to use the premises not only for the transmission of current to be used by the condemnor, but also permitted the use of said premises for carrying current which was to be used by other public utilities. Even had the state court proceedings not specifically mentioned this use, the easement would have included it. For a public utility can best serve its patrons by making full use of its power plant. . . . If the condemnor in the case before us can secure its current cheaper by joining other utilities in erecting a common generating plant, its right (and perhaps its duty) to join in erecting such plant is pretty clear. Likewise, in disposing of its excess supply of electrical power, its right to use its transmission lines to convey its current to another utility is, we think, as clear as its right to use such lines for the transmission of current to its customers.

And this is so whether the purchasing utility distributed its current to customers within or without the state of which the condemnor is a resident. Such a sale of its excess current was indirectly for the benefit of the condemnor's own customers within the state of Indiana.

"Nor can we accept as justifiable the refined distinction which appellant seeks to make between the right of condemnor to use the right of way and the condemnor's grant of such right to another utility to use its wires to secure the excess current from the common generating plant. The condemnor may contract to sell and deliver its current to another utility at the latter's distributing station, or it may sell such current at the generating plant and permit the purchasing company to use its transmission lines to carry away electrical current. Such use of its transmission lines would not be outside the field of its contemplated enjoyment. For such contemplated use, the commissioners who fixed the landowner's damage should, and doubtless will, include compensation. Receiving compensation for the easement which the condemnor acquired through its condemnation proceedings, plaintiff can not complain of the latter's full use and enjoyment of the easement thus obtained, and for which it was required to make payment."

Judge Slick in his opinion, 34 Fed. (2nd) 287, stated the law to be that while power of eminent domain will not be exercised merely to benefit the public of a foreign state, the right to condemn and appropriate land will not be refused merely because people in another state will also receive benefit. And that property owners whose land was taken by condemnation by a public utility for right of way for transmission line could not enjoin use of property so taken by subsidiary corporation for the purpose of generating electrical energy for sale, though a large part of electricity generated would

be sold to power companies in another state for transmitting power for benefit of non-residents.

In a proceeding, such as in the instant case, the petition for the appointment of appraisers presents three questions as stated in the case of *Lowe* v. *Indiana Power Co., supra:*

First: Whether the property appropriated is sought to be taken for a use that is so far public that the legislature has power, under the Constitution, to authorize the appropriation of property for such a use;

Second: Whether the legislature has conferred upon the plaintiff by a general law or otherwise, within its constitutional authority, the power to appropriate for that use the particular property sought to be taken; and

Third: Whether the plaintiff has proceeded and is proceeding in conformity with the law in exercising the power so conferred.

After a careful consideration of the evidence in the instant case and the questions presented we are of the opinion that each of the above questions should be answered in the affirmative and that the rulings made by the lower court should be sustained and the judgment is affirmed.