215 P.2d 812

**EISENBARTH v. DELP et ux.**

No. 7569.

Supreme Court of Idaho.

March 9, 1950.

Frank D. Ryan, Weiser, Dunlap & Dunlap, Caldwell, for appellant.

Donart & Donart, Weiser, for respondents.

GIVENS, Justice.

Respondents own that portion of Lot 20 in Section 15, Township 10 North, Range 5 West of the Boise Meridian, west of the Union Pacific Railroad right-of-way extending diagonally northwest and southeast through the eastern half of said Lot. Their house is approximately 900 feet south of the northwestern corner of the east half of said Lot with a roadway extending from the house to said corner and from said corner northeasterly across the railroad to the State Highway, which parallels the railroad in Lot 11, which Lot lies immediately north of the east half of Lot 20.

Fred Eisenbarth, appellant's father, has his residence in the southwestern portion of Lot 11, east of said Highway and uses the

same road as do respondents from the Highway to the southwestern corner of Lot 11 in the proximity of the point where respondents' road extends south to his house.

Fred Eisenbarth formerly owned all the land likewise in said Section 15, surrounding the western half of Lot 20, north, west, and south, with the exception of Lot 10 which is immediately north of the west half of Lot 20. A lane extends east and west in and along the southern boundary of Lot 10, known as the Slater Lane, which has been at all times used by Fred Eisenbarth and others, and subsequently, by his sons in going from the State Highway to their portion of the Fred Eisenbarth lands as given them by him, when they attained their majority; appellant receiving Lot 23 in 1947. Lot 23 lies immediately south of the west half of Lot 20. While Fred had owned and farmed Lot 23, he traveled west from the State Highway along the Slater Lane, then south in and along the eastern boundary of Lot 21 to Lot 22, which lies immediately east of Lot 23, thence into Lot 23.

Appellant built his house near the northeast corner of Lot 23 and uses the same means of ingress and egress as did his father to Lot 23, a distance of a little less than ¾ of a mile.

In the present action appellant sought by condemnation under Section 7-701, subd. 5, I.C., to have respondents' road extended from the northeast corner of the west half of Lot 20 to his house, as a way 20 feet wide to the northeast corner of Lot 23. By so doing he would have a road to the north line of Lot 20 of only a little over ¼ of a mile as against just under ¾ of a mile over his present route.

The court found appellant had a legal right-of-way of egress and ingress through his father's land and the Slater Lane as above indicated and there was no reasonable necessity for allowing the condemnation, and decreed accordingly.

Where the owner of an estate consisting of several parts so adapts them during his ownership that one derives benefit from the other, and thereafter transfers one of the parts with all appurtenances (as the deed from father to son did herein) without mention of the incidental burdens of one in respect to the other, an implied easement is created in the grantee of such estate of the use theretofore exercised by the grantor. Wilton v. Smith, 40 Idaho 81, 231 P. 704; Johnson v. Gustafson, 49 Idaho 376, 288 P. 427; State ex rel. Carlson v. Superior Court, 107 Wash. 228, 181 P. 689. No dissident authorities have been found. Louisville & N. R. Co. v. Geoghagan, 203 Ky. 198, 261 S.W. 1104 at page 1105.

"It is advisable at this point to again call attention to the fact that the land, upon which those petitioning for the road in question as a road of necessity, (live) was,

prior to its subdivision, owned by N. B. Thomason and at that time there were public roads bounding it on the north and on the west which furnished convenient ways to the church, school, gin, mill, store, etc., heretofore mentioned, and that there were private roadways over said land which intersected said public roads. This being true, the parties owning or living on any subdivision, who would be cut off from ingress and egress to their lands or homes by the fencing of other subdivisions, would have the right to demand access to and the use of the private roads which existed prior to said subdivision, if the same were necessary for them to reach their church, school, gin, mill, etc. And they cannot sit idly by and permit themselves to be unlawfully cut off from these places by their kindred and then demand of their neighbor that he give them an outlet over his land.

"We think it well settled 'that a partition of real estate among heirs carried with it by implication the same right of way from one part to and over the other as had been plainly and obviously enjoyed by the common ancestor, in so far as it is reasonably necessary for the enjoyment of each part.' [Citing cases.]

"It is unnecessary to pursue this discussion further, as it is apparent from what we have said that we have reached the conclusion that there was no evidence to sustain the finding of the trial court that those petitioning for the road across appellant's land had no means of ingress or egress going to and returning from their nearest trading point, mill, gin, schoolhouse, church house, etc., and that a necessity existed for opening the road across appellant's land for the relief of such persons." Leathers v. Craig, Tex.Civ. App., 228 S.W. 995 at pages 998–999.

There was evidence that Lot 21 slopes to the east and Lot 20 to the west and that consequently, during the irrigation season the roadway through Lot 21 along the easterly side thereof is miry and boggy. As against this, the proposed right-of-way would cut appellant's holdings in two and, of course, interfere somewhat with the free access from one part of his land to the other; also, respondents secure water from a body of water colloquially known as Buttermilk Slough, now grandiloquently called Crystal Lake, through an irrigation ditch and a dividing box·just east of the center line of Lot 20, which would be affected by the proposed road and might have to be moved.

The relative cost, convenience and inconvenience, of rearranging respondents' ditch and concrete dividing box to accommodate the desired right-of-way, or for improving the roadway along the west side of Lot 21 so as to avoid the miry condition there during the irrigating season, are not disclosed with any definiteness.

A condemnor need only show reasonable necessity, Marsh Mining Co. v.

Inland Empire M. & M. Co., 30 Idaho 1, 165 P. 1128, but the burden was on appellant to justify the taking. State ex rel. Carlson v. Superior Court, Wash., supra; State ex rel. Schleif v. Superior Court of Okanogan County, 119 Wash. 372, 205 P. 1046; Shedd v. Northern Indiana Public Service Co., 206 Ind. 35, 188 N.E. 322, 90 A.L.R. 1020; Freber v. City of Beaver Dam, 205 Wis. 299, 237 N.W. 119. The deference accorded the selection by a public agency as to necessity and route does not appear to be an attribute of a private agency, Lyon v. Hamor, 73 Me. 56, at least where the private agency already has an existing way; therefore, the rule as urged by appellant and as announced in Washington Water Power Co. v. Waters, 19 Idaho 595, 115 P. 682, would not seem to be applicable herein, Boise City v. Boise City Dev. Co., Ltd., 41 Idaho 294, 238 P. 1006. Appellant *is not a public agency.* Latah County v. Peterson, 3 Idaho 398, 28 P. 1089, 16 L.R.A. 81, was under a statute not applicable herein.

■ The learned trial court viewed the premises and, therefore, had the advantage of correlating the evidence to the actual situation on the ground. It was for him to balance the relative situations pro and con, Welch v. Shipman, Mo.Sup., 210 S.W.2d 1008, as to the respective convenience, inconvenience, costs and all other pertinent, connected facts; State ex rel. Livingston v. District Court of Fourth Judicial District, 90 Mont. 191, 300 P. 916 at page 918, in determining whether a reasonable necessity exists for the taking of respondents' land, in view of the fact appellant already has a right-of-way, though longer. Pippin v. May, 78 Ark. 18, 93 S.W. 64.

■ It has not been shown that the way appellant now has is not reasonably adequate, or the converse that it is so insufficient as to reasonably justify condemning another way as necessary. Gaines v. Lunsford, 120 Ga. 370, 47 S.E. 967, 102 Am.St.Rep. 109; Wyatt v. Hendrix, 146 Ga. 143, 90 S.E. 957.

" * * * If there is a way by which the applicant can lawfully reach his farm or place of residence, a case of necessity does not exist, within the meaning of the constitution. * * *" Chattanooga, R. & S. R. Co. v. Philpot, 112 Ga. 153, 37 S.E. 181 at page 182.

" * * * If the applicant's outlet to the highway affords him practical access thereto, or can be made so at a reasonable expense, he is not entitled to the establishment of the way as a necessity. * *" Coyle v. Elliott, 189 Ky. 569, 225 S.W. 489 at 490; Louisville & N. R. Co. v. Geoghagan, supra.

While, under a statute differently worded from ours, the "spirit" of the case supports the thought that if appellant already has a reasonably convenient way, he may not condemn another. Strawberry Point District Fair Soc. v. Ball, 189 Iowa 605, 177 N.W. 697 at page 698; see also Garris

v. Byrd, 229 N.C. 343, 49 S.E.2d 625; Shake v. Frazer, 94 Ky. 143, 21 S.W. 583.

The decree is, therefore, affirmed. Costs to respondents.

HOLDEN, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.