195 P.2d 351

**CARBON et al. v. MOON et ux.**

No. 7409.

Supreme Court of Idaho.

June 23, 1948.

J. Ward Arney, of Coeur d'Alene, for appellants.

Everett E. Hunt and Raymond T. Greene, Jr., both of Sandpoint, for respondents.

**HOLDEN, Justice.**

This suit was brought originally to establish the existence of both a public and private roadway. On the trial, however, the claim of the existence of a public highway was abandoned by appellants. The trial of the cause then proceeded on the claim of appellants of the existence of a private roadway over and across the lands of respondents to the land of appellants. It appears respondents owned a summer home on the westerly shore of Bottle Bay forming a part of Lake Pend d'Oreille in Bonner county; that in 1941 appellants purchased land on the westerly shore of that bay; that appellant, J. P. Carbon, made three or four trips to the land, planning to build a summer resort thereon and to that end interest several friends. These trips were made over an old log road or

"tote" used many years before for logging when the Bottle Bay area was being logged. These trips apparently led to the construction of a fence and gates by respondents in the fall of 1943, barring further travel across respondents' land. In February, 1944, appellants commenced this suit. So far as material here the complaint alleged:

"II. Plaintiffs, personally and through predecessors in interest, for over twenty years prior to the commencement of this action have been the record title owners of and the actual owners of and in the open, adverse and exclusive possession of and have paid all taxes and assessments against: [Then follows a description of the tract of land owned by appellants.]

"III. This action is brought by plaintiffs to continue the roadway hereinafter described across Section 32, Township 47 North, Range 1 W.B.M. in Bonner County, Idaho.

"IV. Lawrence G. Moon and Hazel B. Moon, husband and wife, since plaintiffs acquired title to the above described property in Section 29 in said Bonner County, Idaho, have installed or caused to be installed a fence across the road which for approximately 35 or 40 years has not only divided said Tax Nos. 2 and 4, but has been used by the public generally and by the plaintiffs and predecessors as the only means of ingress and egress for vehicular travel; and, in addition thereto, have blocked or caused the blocking of the continuation of said roadway running south from the dividing lines between said Sections 29 and 32 across the property of said defendants Moon to a contact which said road has had for 35 or 40 years continuously with the county road, by installing or causing to be installed a locked gateway barring the entrance from said county road to said road leading to the property of plaintiffs.

"V. The said roadway leading from the said county road across the property of defendants Moon and said Section 32 and to the Tax Nos. 2 and 4 involved herein, has been for 35 or 40 years continuously used by the general public and by the owners of said Tax Nos. 2 and 4 and by others for lumbering, freighting, hunting, fishing and recreation and has been and now is the only means of vehicular travel and ingress and egress thereby from the county road to and from said property and has been plainly marked; and said defendants Moon have installed or caused to be installed along the eastern side of said road across their property and said Section 32 a hog tight fence from said county road to the north line of said section 32;

"VI. The blocking of said roadway prevents the plaintiffs from going in or coming from said property of plaintiffs in any other manner than by boat or walking along the shore lines of Lake Pend d'-Oreille; and is wrongful and without right.

"VII. The plaintiffs are willing to maintain said road in condition for their

use thereof and to install or agree to the installation of gateways through which plaintiffs may have reasonable access; and if said roadway be decreed to be a public highway, plaintiffs are willing that said public highway continue to extend across the property of plaintiffs to contact with the lake shore."

Respondents answered the complaint and denied each and every material allegation thereof, excepting the construction of the fence and gates. The cause was tried commencing September 11, 1947. September 24, 1947, findings of fact and conclusions of law were made and filed in favor of respondents and against appellants and judgment and decree duly and regularly entered thereon, from which appellants appeal to this court.

On this appeal appellants vigorously insist the trial court erred in "Finding, concluding and decreeing against the easement claimed by plaintiffs", thereby challenging the sufficiency of the evidence to support the findings and decree. The record shows appellant, J. P. Carbon, testified, in substance, on direct examination:

That he drove over the alleged private roadway with a car when he first looked at the property which he later purchased; that he then had the land surveyed for the purpose of building a cabin; that he had had no difficulty in driving in. On cross-examination he testified, in substance: That he drove in three or four times with a motor vehicle;

"Q. It was an old logging road, a tote road? A. That is not a tote road, there is wheels been in there and you could follow the tracks."

Ed. Dreisbach, called by appellants, in substance testified on direct examination:

That he had known what is now the Carbon property and the Moon property since 1908 or 1909; that the alleged private road was used for logging in 1907, 1908 and 1910; that he was not over it at that time; that wagons and trucks traveled over it more or less during those years. On cross-examination the witness testified in substance: That the alleged private road "was a skid or logging road"; that the loggers in the days when the area was being logged "used it to bring the logs down through there to get down to the bay where they used to land the logs or cedar, whatever they were taking out in that particular job"; that it was customary to use old logging roads for hunting and fishing and that the alleged private road was so used.

J. D. Collins, called by appellants, testified on direct examination, in substance: That he lived about a mile and a half from the Moon property and the log road; that it was not being used by wagons and trucks in 1906; that

"Q. About when was it they started to use it [the logging road] for driving teams down there? A. I don't know exactly, either 1907 or 1908, I am not sure which.

"Q. Since that time it was a road over which vehicles with wheels on them could

run, is that right? A. Well, if you were lucky you are right, yes."

Charles Tiggelbeck, called by appellants, on direct examination, testified in substance:

That he was a surveyor and had been surveying ever since he had been in the county; that he made a survey to establish "Tax No. 2 and Tax No. 4"; that there was a county road between Tax Nos. 2 and 4 (owned by appellants) and sections 29 and 32, T. 57, N.R. 1, W.B.M.; that when one traveled along the county road the alleged private road could be seen; that

"Q. All of the time you have known it that road [the alleged private road] has been open to vehicular travel until Mr. Moon closed it? A. You could use it, I don't know just how useful—

"Q. It was useable? A. That is right.

"Q. Cars, automobiles or wagons could go over it during the time you have known it? A. Every time I noticed it."

On cross-examination Mr. Tiggelbeck testified, in substance:

That the last time he was over the alleged private road was in June 1941 when he made the survey; that

"Q. It was in fact, Mr. Tiggelbeck, but an old tote road or skid road? A. Skid road, I guess."

That he had never seen anyone else drive over the alleged private road.

Respondent L. G. Moon, called by appellants for cross-examination under the statute, testified in substance:

That vehicles "could not be driven down that [the alleged private] road", but later testified it might be possible.

In his own behalf, Moon testified, in substance: That the Moon property had been in the family since 1903 or 1904; that the family had had a summer home there since that time; that the loggers were given permission to haul over the road, referring to the alleged private road; that his mother deeded the property to him in 1941; that the original logging road was changed in 1938; that the road had been used by fishermen and hunters but that that was very rare. On cross-examination, he testified in substance: That for his own use he put the road in good passable condition up to his gate in 1938.

Appellants cite and principally rely upon Kirk v. Schultz, 63 Idaho 278, 285, 119 P.2d 266, 269. In that case Kirk (appellant) by a second cause of action sought to establish an easement by prescription over and across respondent Schultz' lands. In the Kirk case, supra, this court pointed out:

"The record discloses that appellants and their predecessors used the trail, and the trail as widened, as follows: Presley from 1884 to 1889; Gaikowske, 1889 to 1890; Casebeers, 1890 to 1897; Kunzies, 1898 to 1912; appellants, 1912 to May, 1936,

when respondents prevented appellants' use thereof.

"It therefore appears that appellants' predecessors used the trail for a period of approximately 26 years during which time the land was public domain, and for two years subsequent to its withdrawal in 1910 by the government for a Federal Power Reserve. Appellants used the trail for approximately 24 years. In other words, the right of way was used by appellants and their predecessors for 52 years.

"Appellants established their residence in 1912 and used the right of way openly, notoriously and continuously to May, 1936, for the driving of stock, hauling of mining equipment to certain placer mining locations below respondents' premises, hauling hay, traveling to and from Boise City.

"Respondents went into possession of the land now occupied by them in 1933. Their predecessors having occupied the land in 1930 or 1931. It therefore appears that appellants were in the enjoyment of the easement from 1912 to 1933, or a period of 21 years, before respondents came into possession of the land. During all of the time, as above indicated, appellants were in the enjoyment and use of the right of way without interference up until May, 1936, when respondents prevented further use of the right of way by appellants."

While, in the case at bar, hunters and fishermen used the log road in question when the Bottle Bay area was being logged, it does not appear they used it more than other log roads and trails in that area were used for those purposes, and, further, while appellants planned to build a summer resort and also, apparently, to interest a few friends to also build, it does not appear either appellants or any predecessor in interest ever resided on the land now owned by them or had any reason to use, or actually did use, the alleged private road for ingress, egress and regress to such land, openly, notoriously and continuously for the statutory (sec. 39-103, I.C.A.) period. Hence, appellants' contention the case at bar presents a factual situation similar to that in Kirk v. Schultz, supra, is not well founded.

Other cases cited by appellants are Gross v. McNutt, 4 Idaho 286, 38 P. 935; State v. Berg, 28 Idaho 724, 155 P. 968, and Johnson v. Gustafson, 49 Idaho 376, 288 P. 427.

Gross v. McNutt, supra, was an action brought by Gross, as a road overseer to compel McNutt to remove certain obstructions from the highway described in the complaint in that case, and for damages for refusal to remove the same. McNutt admitted he had constructed the obstruction sought to be removed but denied the obstruction was built across any highway which had theretofore been laid out or recorded by order of the board of county commissioners or that it had been used as a highway five years prior to building the obstruction, and further that the public had

been provided with a good and sufficient road that was much shorter and equally as good as the one described in the complaint and that the public had suffered no inconvenience or detriment whatever by reason of the closing of the public highway. And, further, that the highway in question there had not been worked throughout its entire length. This court held [4 Idaho 286, 38 P. 936]:

"Our statute [then sec. 851, R.S., now sec. 39-103, I.C.A.] does not require work to be done upon a part of a highway not needing work, in order to acquire a right of way by prescription. If that contention is right, a highway acquired by prescription might be obstructed with impunity at any point where it had not been worked or kept up at public expense. We cannot assent to this doctrine." Clearly Gross v. McNutt, supra, is not in point here.

State v. Berg, supra, was a criminal action. Berg was charged with and convicted of obstructing a public road. It appears Berg was the owner of a tract of land over which the obstructed road ran. The road had been traveled some in 1907 and in 1908 Berg fenced his land and left a portion of it, a strip of about fifty feet wide and 200 yards long outside his fence, and that strip of land outside the fence was the land in question there and was used as a public road by the traveling public for five years. Berg's defense to the action consisted entirely of the claim the road was not a public road. This court pointed out [28 Idaho 724, 155 P. 969]:

"The evidence clearly shows that it [the highway in question] had been traveled as a public road for more than five years; that the defendants fenced his land, leaving said road outside of his fence. The defendant [Berg] himself testified that he had left said 50-foot strip outside of his fence in 1908, and allowed the public to use it as a road. The evidence was amply sufficient to go to the jury for them to determine therefrom the intention of the defendant in leaving said land open to the public for a public road."

The jury found against Berg and this court affirmed the finding of the jury and the judgment entered thereon. It is clear State v. Berg, supra, is not in point in the instant case.

Johnson v. Gustafson, supra, was an action and cross-action to establish a prescriptive easement for drainage. It appears one Tautphaus owned the southwest quarter of section 30, township 2, north, range 38 E.B.M., in Bonneville county; that he conveyed portions of such tract to Gustafson, Plank and Minnie Reno, respectively; that the topography was such that water placed on Plank's land, as well as about five acres of Reno's for irrigation, drained off to land owned by one Johnson and continued on to Gustafson's land, from whence it passed through a culvert under a highway into an irrigation canal; that there was a swale extending from Plank's

land through Johnson's land and thence through Gustafson's land to said highway; that Gustafson constructed a low dike of earth across the swale designed to obstruct the surface and surplus waters from flowing onto his land from the Johnson land. Johnson prosecuted the suit against Gustafson, Plank and Minnie Reno to compel Gustafson to remove the dike. The deeds from Tautphaus, including Johnson's grantor, contained no particular grant of an easement to run waste water across Gustafson's land. This court held [49 Idaho 376, 288 P. 429]:

"A general grant of the 'appurtenances' is sufficient to carry an appurtenant water right not specifically described in the deed [citing cases]. And the general rule is that, where an easement is annexed to land, either by grant or prescription, it passes as an appurtenance with the conveyance 'of the dominant estate, although not specifically mentioned' in the deed, or even without the use of the term 'appurtenances,' 'unless expressly reserved from the operation of the grant.' "

From which it is clear Gustafson v. Johnson, supra, is not in point.

Appellants, as above pointed out, at first sought to establish the existence of a public highway. Failing in that, they then attempted to establish the existence of an easement of necessity. The evidence in support of the claim of an easement of necessity is meager, indefinite and insufficient, and the trial court correctly found and concluded there was a failure of proof on that issue. Furthermore, appellants could not have seriously relied upon an easement of necessity in that no request was made for a finding thereon, nor is the failure to find thereon specified as error on this appeal. Moreover, our road statutes provide a complete and sure remedy to those occupying the position in which appellants find themselves. We direct attention to sections 13-701, subd. 5, and 39-606, I.C.A.

It follows the decree must be affirmed, and it is so ordered, with costs to respondents.

GIVENS, C. J., and BUDGE, MILLER and HYATT, JJ., concur.