739 P.2d 421

**Glenn ERICKSON and Jacquelyn B. Erickson, husband and wife, Plaintiffs-Respondents-Cross Appellants,**

v.

**Donald AMOTH and Myrna Amoth, husband and wife, Defendants-Appellants-Cross Respondents.**

Nos. 16271, 16429.

Court of Appeals of Idaho.

June 10, 1987.

Gary A. Finney, Sandpoint, for appellants.

Peter B. Wilson, Bonners Ferry, for respondents.

BURNETT, Judge.

This case involves one of the most protracted legal disputes in Idaho's court system. Since 1974, Glenn and Jacquelyn Erickson have sought to condemn an easement across rural land owned by Donald

and Myrna Amoth. After two prior appeals and many hearings, the Ericksons finally have succeeded. In this appeal the Amoths argue that the condemned easement is unnecessary and that the trial judge made inadequate findings on the question of necessity. The Ericksons have cross-appealed, contending that the judge erred by requiring them to build a fence along the easement. They also argue that the judge erroneously awarded costs and attorney fees to the Amoths. For reasons stated below, we affirm the district court's judgment in all respects.

The following facts are not in dispute. The Ericksons and the Amoths own adjoining properties near Bonners Ferry, Idaho. A public road runs along the south side of the Erickson property. The northern seventy acres of that property are separated from the southern remainder by a steep canyon. There is no way for the Ericksons to reach the northern portion from a public road without crossing the canyon or traversing neighboring land. The Ericksons want to farm the northern portion; however, they maintain that it is not feasible to build a road across the canyon. Accordingly, they seek to condemn an easement across the Amoth property, avoiding the canyon.[1]

When the Ericksons brought their first suit in 1974, the district judge found that the proposed easement was unnecessary. He entered judgment in favor of the Amoths. The Supreme Court affirmed, noting that the Ericksons already possessed access to the northern portion of their property because they had a license to cross the land of a neighbor other than the Amoths. *See Erickson v. Amoth*, 99 Idaho 907, 591 P.2d 1074 (1978) (*Erickson I*). After the license expired, the Ericksons again sued to condemn an easement across the Amoth property.[2] The district court entered summary judgment for the Amoths. The judge ruled that the suit was barred by the doctrine of res judicata. The Supreme Court reversed, holding that because the license had expired, a material fact had changed and the doctrine of res judicata did not apply. *Erickson v. Amoth*, 105 Idaho 798, 673 P.2d 398 (1983) (*Erickson II*). The case was remanded, and the district court conducted a trial on the merits.

Each side presented witnesses who testified regarding the cost of building a road across the canyon. The testimony was conflicting, but the trial court, "plac[ing] great reliance upon the expert testimony" of a road builder called by the Amoths, determined that a road across the canyon could be constructed "at reasonable expense." Accordingly, the judge concluded that necessity did not exist for condemning an easement over the Amoths' land. However, as described more fully below, the trial judge subsequently reopened the case. After hearing further testimony, he determined that the expense of constructing a road across the canyon would be prohibitive and that an easement across the Amoths' property was necessary. The judge granted the easement and ordered compensation to the Amoths. He also ordered the Ericksons to fence the easement and to pay the Amoths' reasonable attorney fees. Both sides appealed.[3]

1. In some circumstances, a common law easement based upon necessity or continuous use may be sought rather than a condemned easement. *E.g., Cordwell v. Smith*, 105 Idaho 71, 665 P.2d 1081 (Ct.App.1983). However, the Ericksons' complaint does not plead the existence of any common law easement; neither has it been argued that all the requisite tests for such an easement would be satisfied in the circumstances of this case.

2. The Ericksons sought an easement across the Amoth property, rather than across the property where the license formerly existed, because the license route was considered impassable. In-

deed, the Supreme Court's decision in *Erickson I* noted that the feasibility of the license route had been attacked, but the attack was rejected because it was based upon an untimely filed affidavit. In the present litigation, Mr. Erickson testified without rebuttal that an easement across the Amoth property would be more feasible than an easement following the license route.

3. The appeals eventually were consolidated, and the Ericksons were designated as cross-appellants, as shown in the caption. We have used the same terminology in the text of this opinion.

## I

We first consider the Amoths' challenge to the necessity of an easement. Idaho Code §§ 7–701 to 7–721 govern the exercise of what is commonly called a private eminent domain power. Idaho Code § 7–701 provides that "[b]yroads, leading from highways to residences and farms" are public uses in behalf of which the condemnation power can be exercised by private plaintiffs. Before condemning property, however, a plaintiff must show that "the taking is necessary to such use." I.C. § 7–704. It is well established that the required showing is one of "reasonable" necessity. *Erickson I, supra; McKenney v. Anselmo,* 91 Idaho 118, 416 P.2d 509 (1966); *Eisenbarth v. Delp,* 70 Idaho 266, 215 P.2d 812 (1950). The standard is the same as that which exists in suits for common law easements by necessity. *MacCaskill v. Ebbert,* 112 Idaho 1115, 739 P.2d 414 (Ct.App.1987); *Cordwell v. Smith,* 105 Idaho 71, 665 P.2d 1081 (Ct.App.1983).

Here, the Ericksons have a legally available, but physically difficult, access to the northern portion of their property. In a decision issued contemporaneously with our opinion in this case, we have discussed the concept of reasonable necessity in circumstances where legal access is made problematic by terrain features:

Reasonable necessity has no formulaic meaning. It varies with the facts of each case. Obviously, one seeking an easement need not show that a legally available route is *absolutely* impossible to use. There are few natural obstacles that could not be surmounted by modern engineering if unlimited resources were committed to the task. On the other hand, neither is it sufficient merely to show that the legally available route would be inconvenient or expensive. *Bob Daniels & Sons v. Weaver,* [106 Idaho 535, 681 P.2d 1010 (Ct.App.1984)]. Rather, an easement ... should be granted only if the difficulty or expense of using the legally available route is so great that it renders the parcel unfit for its reasonably anticipated use. As our Supreme Court has explained, "[i]f the applicant's outlet to the highway affords

him practical access thereto, or can be made so at reasonable expense, he is not entitled to the establishment of the way as a necessity." *Eisenbarth v. Delp,* 70 Idaho 266, 215 P.2d 812 (1950). Moreover, the benefits derived from the easement must not be outweighed by possible damage or inconvenience to the owners of the servient property. *See, e.g., Gaines v. Lunsford,* 120 Ga. 370, 47 S.E. 967 (1904); *Wiese v. Thien,* [279 Mo. 524, 214 S.W. 853 (Mo.1919)]. Reasonable necessity is a question of fact for the trial court. *McKenney v. Anselmo,* 91 Idaho 118, 416 P.2d 509 (1966). The burden of proof rests with the party seeking the easement. *Eisenbarth v. Delp, supra.*

*MacCaskill v. Ebbert,* 112 Idaho at 1120, 739 P.2d at 419. These criteria are applicable to the present case.

When the district court conducted a trial after *Erickson II,* the testimony disclosed that farming the northern portion of the Ericksons' property would generate a net annual revenue of approximately $3,500. The witnesses were in substantial agreement regarding the cost of building a road to the northern parcel along the route of the proposed easement. The Ericksons' expert placed the total cost of a graveled road at $17,200, while the Amoths' expert placed it at $18,300. However, there were conflicting views regarding the cost of a graveled road through the canyon. The Ericksons' expert testified that such a road would cost $60,000, of which $30,000 would be the expense of graveling. The Amoths' expert testified that an existing road to the canyon was "excellent" and that extension of the road across the canyon would cost only $6,000 plus the expense of graveling.

In a memorandum opinion, the district judge properly weighed the evidence against the standard of reasonable necessity. He further stated:

There is a difference between necessity and mere convenience. Erickson may find it to be more convenient to construct a road over the land of Amoth, but he may not take such away under a claim that it is necessary to the proper use and

enjoyment of his own land, or to save expense, unless there is no other reasonable alternative way or ... the expense of construction would be prohibitive.

The judge went on to note that "[t]he testimony is conflicting but the Court places great reliance upon the expert testimony of [the Amoths' witness]...." He concluded that construction of a road along the canyon route was feasible and could be accomplished at reasonable expense. Accordingly, he refused to grant an easement across the Amoths' land.

The Ericksons subsequently contacted the Amoths' witness—a professional road builder—and requested a bid for construction of the canyon road. The bid received was not $6,000 plus graveling, as suggested by the testimony. Rather, it was $15,000 plus an assignment of timber rights and a stipulation that the Ericksons supply culverts, in addition to the expense of graveling. The Ericksons then moved for a new trial. The trial judge, apparently concerned by inconsistencies between the road builder's testimony and his subsequent bid, granted the motion on the ground of newly discovered evidence. *See* I.R.C.P. 59(a)(4). This discretionary ruling has not been challenged on appeal.

The scope of the new trial was limited to further testimony by the road builder. He "withdrew" his bid and stated that he would build the road for $9,000 plus $30,000 for graveling, with the Ericksons to supply culverts. However, the specifications for the road proposed at this time differed from those given at the first trial. The grade of the road and the cuts in the hillside leading down to the road would be steeper than previously planned. In fact, the slope of the cuts would be steeper than the witness earlier had said would be appropriate for soil conditions in the canyon.

The trial judge, in a supplemental memorandum decision, reviewed this testimony and the prior testimony in detail. He stated that "viewing the testimony of the expert as a whole on the trial, deposition and rehearing, when compared to the testimony of Plaintiff[s] and his [sic] witness, ... the Court finds that the evidence preponder-

ates in favor of the Plaintiff[s]." The judge concluded that condemnation of an easement was necessary because "there is no other reasonable alternative way and ... the expense of construction [across the canyon] would be prohibitive."

■ We think it evident that the trial judge understood and applied the correct legal standard in this case. He focused on whether the plaintiffs could create practical access to the isolated parcel, over their own land, at reasonable expense. He considered whether the cost of such access would be so high as to render the property unfit for its reasonably anticipated use. We recognize that the judge did not specify a precise cost figure for the canyon road. The absence of a finding of fact on a material issue may be disregarded only where the record is clear and yields an obvious answer to the relevant question. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982). However, we deem this to be such a case. The trial judge, by emphasizing the glaring discrepancies in the testimony of the Amoths' expert, made it clear that he thoroughly discredited the testimony of that witness, leaving the Ericksons' cost figures as determinative. Moreover, even if the road builder's bid had been accepted, his estimate that the road would cost $45,000 ($15,000 plus $30,000 for graveling), with the Ericksons to provide culverts and the builder to receive timber rights, did not vary substantially from the Ericksons' total figure of $60,000. Both estimates demonstrated a prohibitive cost when compared to the anticipated net yield of $3,500 per year for farming the northern parcel.

The trial judge also properly considered the impact of the easement on the Amoths. The judge awarded the Amoths $1,200 per acre—the amount they sought—for their loss of use of the ground within the easement. There was no testimony to indicate that the easement would substantially interfere with the Amoths' use and enjoyment of their remaining property. In fact, their own expert testified that if fences were constructed, the easement would not decrease the value of the remaining proper-

ty. The trial court so found. Nor was there evidence to indicate that any nonpecuniary interests of the Amoths—such as privacy or aesthetic values—would be impaired by allowing an easement to be condemned. Accordingly, we conclude that the district judge made adequate findings to support a judgment condemning an easement and that his findings rested upon substantial evidence. The findings will not be disturbed. I.R.C.P. 52(a).

## II

■ As noted above, the judge required the Ericksons to construct a fence. The fence would run along one side of the easement where it adjoined the boundary of the Amoths' property and along both sides of the easement where it crossed the interior of the property. The Ericksons now question the need for a fence.

In determining the compensation to be awarded a condemnee, the trier of fact must consider "the damages which will accrue to the portion [of the condemnee's land] not sought to be condemned, by reason of its severance from the portion sought to be condemned...." I.C. § 7–711(2). The Ericksons do not dispute that a lack of fencing could render the Amoths' remaining property unsuitable for pasture. They rely on the present lack of any grazing activity and on the lack of testimony in the present record regarding plans to put livestock on the premises. We believe the Ericksons' position is too narrow. As one court long ago stated: "If a road is opened through unenclosed land, by which the tract is split, it is proper to consider the additional fencing, which may become necessary at a future day, when the proprietors shall ... convert the lands into fields for cultivation or pasture." *Jones's Heirs v. Barclay*, 25 Ky. 73, 2 J.J.Marsh. 73 (Ky. 1829). In a statute dating back to the nineteenth century, our Legislature expressed a similar concern by requiring that

railroads which condemn property must pay the cost of building fences and cattle guards. *See* I.C. § 7–711. We see no reason why similar protection should not be provided against motor vehicle traffic in the twentieth century.

Concededly, before fencing is awarded, there should be some showing that such protection is, or is likely to become, necessary. Here, the judge found that the Amoths' land previously had been used for pasturing cattle. Although the evidence in support of that finding is not in the record before us, the finding is merely a reiteration of a determination made in the trial before the first appeal. There the district court found that the Amoths had pastured cattle on the property in the past and that they hoped to do so again in the future. *Erickson I*, 99 Idaho at 909, 591 P.2d at 1076. We believe the trial judge was entitled to restate this unrebutted finding of a relevant fact in ongoing litigation between the same parties.[4] Accordingly, we uphold the fencing requirement.

## III

■ Finally, the Ericksons challenge the judge's award of costs and attorney fees to the Amoths. The challenge is facially logical because the Ericksons prevailed in their claim to an easement. However, in *Ada County Highway District v. Accarequi*, 105 Idaho 873, 673 P.2d 1067 (1983), our Supreme Court held that attorney fees may be awarded to a nonprevailing defendant in a condemnation proceeding. Such an award does not—indeed, could not—depend on a finding that the successful condemnation suit had been brought or pursued "frivolously, unreasonably or without foundation" under I.R.C.P. 54(e)(1). The Ericksons argue that *Accarequi* is not applicable to private condemnation actions. They further argue that even if *Accarequi* does apply, the judge abused his discretion in

---

4. At oral argument, the Ericksons' attorney referred to deposition testimony apparently indicating that the Amoths once grazed cattle on the property and planned to do so again. However, the depositions were not provided to us, nor were they made exhibits at trial. We have not

relied upon them. *See* 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2142 (1970); *cf. Crollard v. Crollard*, 104 Idaho 189, 657 P.2d 486 (Ct.App.1983) (appellate court cannot consider interrogatory answers not admitted into evidence).

making an award under the facts of this case.

The *Accarequi* decision recognized that costs and attorney fees should be handled differently in condemnation actions than in other civil actions. As a general rule, costs and attorney fees are allowed only to prevailing parties. But in a condemnation action, the concept of "prevailing party" is not easily applied. The real issue in many cases is not whether condemnation will occur but what amount should be allowed as just compensation. Furthermore, condemnation is a uniquely unilateral cause of action. The defendant is hailed into court, not because he allegedly breached a contract duty or committed a tortious act, but because of the fortuitous circumstance that someone—be it the government or a private citizen—asserts the need to make a "public" use of his land. The defendant's property rights must yield to the public use, so long as just compensation is paid. Art. 1, § 14, Idaho Constitution. *Accarequi* simply holds that if the defendant reasonably puts the condemnor to his proof, but fails to prevent the condemnation, he still may be entitled to costs and fees in the discretion of the trial court.

We are not persuaded to distinguish between those cases where the condemnor is a governmental body and those where it is a private citizen asserting a statutory power. The rationale of *Accarequi* fits both kinds of cases. Indeed, an award of costs and attorney fees may be even more appropriate in the private condemnation case, where the condemnor's assertion of need for the defendant's property is not preceded by any publicly accountable decision of government officials.

The question remains whether the award was proper in this case. As noted, *Accarequi* makes it clear that an award of fees to a condemnee is discretionary. *Accarequi* lists a series of factors which may be considered in determining the propriety of a fee award. Two of them are directly relevant to private condemnation actions—the nature and timing of any settlement offers, and whether the issue of public use and necessity is controverted. In this case, the evidence indicates that the Ericksons offered to settle for $1,000 per acre—$200 less than the Amoths ultimately received—or to submit the property to a binding appraisal. Neither the monetary offer nor the invitation to arbitrate constituted a settlement offer of at least 90% of the ultimate award, a benchmark percentage listed by the *Accarequi* court as relevant in considering attorney fees. Further, the issue of necessity was sharply controverted in this case. Although the issue ultimately was resolved in the Ericksons' favor, there certainly was room for honest disagreement on the point. In this regard, the fact that the Erickson property was not legally landlocked is significant. The Amoths' decision to put the Ericksons to their proof was supported by the outcome of the first suit and by the result initially announced in the present suit. The district court was entitled to consider the peculiarly heavy burden this lengthy litigation had imposed on the Amoths. We conclude that the district court's award of costs and fees did not constitute an abuse of discretion.

However, we do not believe that a similar award on appeal would be appropriate. The Amoths' arguments to this Court, while not frivolous, have been directed primarily toward questions of fact. Such appeals are not favored by the courts of this state. *See T–Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 642 P.2d 70 (Ct. App.1982). Moreover, both sides have chosen the role of appellant and neither of them has succeeded.

The judgment of the district court is affirmed. No costs or attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.