739 P.2d 414

**Paul MacCASKILL, Plaintiff-Appellant,**

**v.**

**Robert EBBERT and Elise Ebbert, husband and wife, Donald G. Siegel and Carol McKenna Siegel, husband and wife, Defendants-Respondents.**

**No. 16377.**

Court of Appeals of Idaho.

June 10, 1987.

---

Roger E. Crist (Crist and Barsotti), Ketchum, and Robert M. Tyler, Jr. (argued) (Elam, Burke and Boyd), Boise, for appellant.

Thomas C. Praggastis (argued) (Roark, Donovan, Praggastis, Elkins and Phillips), and E. Lee Schlender, Ketchum, for respondents Ebbert.

George R. Kneeland (Kneeland, Korb, Collier and Benjamin), Ketchum, for respondents Siegel.

## SUBSTITUTE OPINION UPON DENIAL OF PETITION FOR REHEARING

This opinion supersedes the Court's prior opinion dated December 31, 1986.

BURNETT, Judge.

■ This is an appeal from a summary judgment rejecting a claim of easement by necessity to "landlocked" property. Such an easement customarily arises where part of a tract is conveyed and, as a result of the severance, the part conveyed or the part retained is deprived of legal access to a public road. *Cordwell v. Smith*, 105 Idaho 71, 665 P.2d 1081 (Ct.App.1983). The question presented in this case is whether an easement by necessity might also arise where the severed property has legal access but the access is physically impassable. The district court said no. We reverse.

### I

The following facts are not in dispute. Paul MacCaskill owns property known as tax lot 2742 in the Sun Valley Subdivision near Ketchum, Idaho. At one time the lot

was part of a large unified tract owned by Earl and Ethel Weatherhead. As shown in the simplified illustration below, the Weatherhead property adjoined a public road. In the spring of 1948, the Weatherheads sold part of lot 29, and all of lots 31, 32 and 33. Later that year, they sold the remainder of lot 29 and all of lots 28 and 30, cutting off legal access from the road to interior portions of the tract. Legal access was temporarily restored when a purchaser named Gruener acquired the interior land along with parts of roadside lots 29 and 30. Gruener held these properties until 1979, when he sold lot 2742 to Paul MacCaskill's predecessor in interest. Lots 32 and 33 subsequently were resubdivided into "new" lots 32, 33A and 33B as shown in the sketch. Robert and Elise Ebbert eventually acquired lots 32 and 33A. A security interest in the Ebbert lots is held by Donald and Carol Siegel.

MacCaskill sued the Ebberts and Siegels, seeking an easement across the Ebbert property for access to lot 2742.[1] MacCaskill asserted that due to steep terrain, no other access route to the public road was feasible. His complaint was grounded in two alternative theories—private condemnation under I.C. § 7–701, and recognition of an easement by necessity. MacCaskill moved for summary judgment on both theories. The district judge denied the motion as it related to condemnation, holding that a genuine issue of fact existed as to whether it was actually necessary to cross the Ebbert property rather than to reach the public road by a different route. However, the judge entered partial summary judgment in favor of the Ebberts and Siegels on the question of easement by necessity. The judge declared that because lot 2742 had enjoyed a legal access to the road until it was severed from other land owned by Gruener, any easement by necessity could run only upon the remainder of Gruener's land, not upon the Ebbert property. The partial summary judgment was certified under I.R.C.P. 54(b), and this appeal followed. Further proceedings on the private condemnation claim have been stayed pending the outcome of the appeal.

---

**1.** The proposed easement would cross other properties within the old Weatherhead tract. MacCaskill has negotiated agreements with the owners of these properties. However, discussions between MacCaskill and the Ebberts apparently have been unfruitful.

## II

Before we turn to the specific issue of necessity created by a physically impassable access, we pause to note the historical development and modern status of easements by necessity. Such easements are creatures of the common law. References to them can be found in cases from other jurisdictions dating well back into the early nineteenth century. *See generally* 25 AM. JUR.2D *Easements and Licenses* §§ 34–38 (1966).

Early Idaho decisions were reticent about embracing the common law easement by necessity. Indeed, on some occasions, the Idaho Supreme Court suggested that statutory provisions for private condemnation (presently codified as I.C. §§ 7–701 and 40–2316) might fulfill the purposes previously served by the common law. Justice Morgan, speaking for the Court before the turn of the century, cited with approval a fellow jurist's statement that "I consider our statute in regard to private roads as simply based on [the] common law right, and regulating its exercise. The right existed before the act was passed, by the established rules of the common law in regard to the construction of grants." *Latah County v. Peterson,* 3 Idaho 398, 401–02, 29 P. 1089, 1090 (1892). In *Carbon v. Moon,* 68 Idaho 385, 195 P.2d 351 (1948), the plaintiffs sought to establish that a public highway existed across the defendants' property. When the claim was rejected, the plaintiffs fell back on the theory of easement by necessity. The Supreme Court noted that there was insufficient evidence to support the claim. It further remarked that "our road statutes provide a complete and sure remedy to those occupying the position in which [plaintiffs] find themselves." *Id.* at 392, 195 P.2d at 355.

Nevertheless, the common law easement survived. In *Close v. Rensink,* 95 Idaho 72, 501 P.2d 1383 (1972), our Supreme Court explicitly recognized the easement's continued viability. The Court explained that an easement could be implied on the basis of necessity because the parties at the time of severance presumably recognized the need for access. Thus, the easement was grounded in a presumption of intent—just as an analogous easement by continuous use could be implied upon a presumption that the parties meant an existing access to continue.[2] The *Rensink* court cited no prior Idaho authority in its discussion of easements by necessity. Instead, it relied upon *Martino v. Fleenor,* 148 Colo. 136, 247, 365 P.2d 247 (1961), a case which, in turn, cited a general discussion in 17A AM.JUR. *Easements* § 58 (1957).

The easement by necessity was recognized again, and was held to exist upon the facts presented, in *Burley Brick & Sand Co. v. Cofer,* 102 Idaho 333, 629 P.2d 1166 (1981). The Court, continuing to rely on *Martino,* reiterated that an easement of necessity rests on the presumption that when a party conveys property, he conveys whatever is necessary for the beneficial use of that property. The Court noted that whether an easement should be implied as a result of necessity depends on terms of the deed creating the severance and on other circumstances of each case. The Court quoted with approval a statement in *Martino* and in the AM.JUR. article that the easement by necessity is anchored in a public policy of preventing lands from being "rendered unfit for occupancy or successful cultivation." 102 Idaho at 335, 629 P.2d at 1168.

Since *Burley Brick,* the Idaho Supreme Court has not returned to the subject of easements by necessity. However, we have addressed the topic. In doing so we have deemed ourselves constrained to follow the Supreme Court's lead in *Rensink* and *Burley Brick,* recognizing the easement and imparting a public policy rationale to it. In *Cordwell v. Smith, supra,* we set out the three elements required to establish an easement by necessity: (1) unity of ownership prior to division of a tract; (2) necessity for an easement at the time of severance; and (3) great present necessity. In *Bob Daniels & Sons v. Weaver,* 106 Idaho 535, 681 P.2d 1010 (Ct.

---

**2.** The plaintiffs in today's case have not asserted an implied easement arising from apparent continuous use. Accordingly, we need not elaborate the elements of such an easement here.

App.1984), we added that "[a]n easement by necessity . . . is not a creature of contract; it is a creature of public policy. Such an easement arises independently from any contract and may even thwart the intent of the sellers or purchasers." *Id.* at 543, 681 P.2d at 1018. In making this observation we did not declare that intent is irrelevant or that the parties are powerless to bargain away an easement by necessity. Rather, we meant to emphasize that the easement does not depend on an express mutual agreement in order to come into existence. It arises, and will be recognized, when its three elements have been established. It is not defeated by a contrary expectation harbored by one of the parties.

Thus, in Idaho, the easement by necessity has evolved into a hybrid reflection of presumed intent and public policy. It is the intent component which distinguishes such an easement from a statutorily condemned easement. *See, e.g., Daywalt v. Walker,* 217 Cal.App.2d 669, 31 Cal.Rptr. 899 (Ct.App.1963); *Doten v. Bartlett,* 78 A. 456 (Me.1910); *Penn Mutual Life Ins. Co. v. Nelson,* 170 Or. 248, 132 P.2d 979 (Or. 1943); *Tucker v. Nuding,* 92 Or. 319, 180 P. 903 (1919); *Brasington v. Williams,* 143 S.C. 223, 141 S.E. 375 (1927); *see* 2 G. THOMPSON, REAL PROPERTY § 364 (1980). Condemnation is an act of public power vested by statute in a private plaintiff who may never have engaged—and whose predecessors may never have engaged—in any previous transaction with the current or prior owners of land across which an easement is sought. Such a taking must be accompanied by just compensation. The common law easement, in contrast, rests on a presumption that when a severance occurs, the parties recognize the necessity, if any exists, for providing a means of access. They strike their bargain accordingly. Therefore, an easement can be recognized, consistent with public policy, without requiring additional compensation to be paid. The easement endures while the necessity exists, unless by express agreement the easement is negated or extinguished. If the easement has been negated or extinguished, another easement

may be created only by voluntary negotiations or by an involuntary taking through the power of eminent domain, upon a showing of reasonable necessity. In either of those events, compensation must be paid.

### III

We now consider whether an easement by necessity may arise where the property is landlocked, not because a legal access is nonexistent but because topographical characteristics of the land make the legal access impassable. As noted above, one who claims an easement by necessity across another's land may establish a prima facie case through proof (1) that the two parcels once were part of a larger tract under common ownership; (2) that a necessity for the easement existed when the parcels were severed; and (3) that the present necessity for the easement is great. *Cordwell v. Smith, supra.* When each element is proven, an easement by necessity will be recognized unless a countershowing is made that such an easement has been explicitly bargained away by the parties or their predecessors.

Nothing in these elements, or in the underlying public policy against landlocked properties, explicitly requires that a landlocked condition be caused solely by legal impediments to access. There are cases where a tract of land, though not totally landlocked in a legal sense, cannot yield a beneficial use because the sole legal access is inadequate for the purposes to which the property naturally might be put. *E.g., State v. Deal,* 191 Or. 661, 233 P.2d 242 (1951) (easement by necessity granted when only other access to property was by means of a public beach). *See generally* Annotation, *Way of Necessity over Another's Land, Where a Means of Access Does Exist, But is Claimed to be Inadequate,* 10 A.L.R.4th 447 (1981).

In other circumstances, the legal access may be adequate to serve one portion of the property, but another portion may be physically isolated from the access. This can occur when the property is divided by a hill, river, ravine or other terrain feature so

formidable that direct passage from one side to the other is impractical. *See, e.g., Wiese v. Thien,* 279 Mo. 524, 214 S.W. 853 (1919); R. CUNNINGHAM, W. STOE-BUCK & D. WHITMAN, THE LAW OF PROPERTY § 8.5 n. 8 (1984) (hereinafter CUNNINGHAM). *Cf. Erickson v. Amoth,* 99 Idaho 907, 591 P.2d 1074 (1978) (statutory condemnation). *See generally* Annotation, *Way of Necessity Where Only Part of Land is Inaccessible,* 10 A.L.R.4th 500 (1981). It is this kind of circumstance that arguably confronts us here.

In either situation, the fact that the property in question lacked feasible access to a public road at the time of severance, due to topographical obstacles, will support a presumption that the parties intended the grantor to retain an alternative easement across the property. Thus, we recognized in *Cordwell v. Smith, supra,* that lack of access could result from physical as well as legal obstacles. Where access is legally blocked by the properties of others, we said a landowner seeking an easement must establish a reasonable necessity for the claimed route. *Cordwell v. Smith,* 105 Idaho at 81, 665 P.2d at 1091. This requirement, we observed, is "comparable to the standard used in ... private condemnation actions." *Id.* We think the same standard is applicable in cases where severance has left a landowner with legal, but physically impassable, access to his property.[3]

■ Reasonable necessity has no formulaic meaning. It varies with the facts of each case. Obviously, one seeking an ease-ment need not show that a legally available route is *absolutely* impossible to use. There are few natural obstacles that could not be surmounted by modern engineering if unlimited resources were committed to the task. On the other hand, neither is it sufficient merely to show that the legally available route would be inconvenient or expensive. *Bob Daniels & Sons v. Weaver, supra.* Rather, an easement by necessity should be granted only if the difficulty or expense of using the legally available route is so great that it renders the parcel unfit for its reasonably anticipated use. As our Supreme Court has explained, "[i]f the applicant's outlet to the highway affords him practical access thereto, or can be made so at reasonable expense, he is not entitled to the establishment of the way as a necessity." *Eisenbarth v. Delp,* 70 Idaho 266, 215 P.2d 812 (1950). Moreover, the benefits derived from the easement must not be outweighed by possible damage or inconvenience to owners of the servient property. *See, e.g., Gaines v. Lunsford,* 120 Ga. 370, 47 S.E. 967 (1904); *Wiese v. Thien, supra.* Reasonable necessity is a question of fact for the trial court. *McKenney v. Anselmo,* 91 Idaho 118, 416 P.2d 509 (1966). The burden of proof rests with the party seeking the easement. *Eisenbarth v. Delp, supra.*

## IV

In the present case, as we have seen, the MacCaskill property and the Ebbert proper-

---

3. In a prior, unreported opinion in this case, we suggested that a showing of "strict" necessity, rather than "reasonable" necessity, ought to be required where an easement by necessity is sought by a landowner who has legal but impassable access. This suggestion was based on the following language in *Cordwell:*

> Where a person claiming a way of necessity to a piece of property has other adjoining lands that abut on a public way, he may not be entitled to a way of necessity across lands of his grantor or across lands of strangers except in cases of "strict" necessity. *Close v. Rensink, supra,* furnishes an example of this situation. *See also Gaines v. Lunsford,* 120 Ga. 370, 47 S.E. 967 (Ga.1904); and *Tucker v. Nuding,* 92 Or. 319, 180 P. 903 (Or.1919).

105 Idaho at 80, 665 P.2d at 1090. However, we went on in *Cordwell* to uphold the application of a "reasonable" necessity test to the facts there presented. The cases cited in the passage quoted from *Cordwell* did not articulate any unique elements of "strict" necessity. Indeed, we recently found, in deciding *Erickson v. Amoth,* 112 Idaho 1122, 739 P.2d 421 (Ct.App.1987), that the criteria for determining "reasonable" necessity in a private condemnation case could not easily be distinguished from those we had postulated for "strict" necessity in the instant case. Accordingly, we now conclude that there are not two discrete tests of "reasonable" and "strict" necessity. Rather, "reasonable" necessity is the unified test; but the presence of a legal, though physically problematic, access is a highly important factor in determining whether the plaintiff has succeeded in proving reasonable necessity for the easement sought.

ty originally were part of the unified Weatherhead tract. They were severed when the Ebbert property and other roadside lots were sold in 1948. Consequently, the first requirement for establishing an easement by necessity—common ownership followed by severance—has been satisfied. The other requirements—necessity for an easement at the time of severance, and great present necessity—pose nettlesome factual problems.

Lot 2742 was not legally landlocked when the Ebbert property was severed in the spring of 1948. Lot 2742 then adjoined lot 2744, which in turn adjoined several roadside lots that were not sold until later in the year. The district judge apparently reasoned that because lot 2742 was not legally landlocked when the Ebbert property was severed, there was no necessity for an easement across the Ebbert property at that time. However, as our foregoing discussion has indicated, physical impediments to access also may be considered in determining the necessity for an easement. The district judge's focus on legal access alone was unduly narrow.

If MacCaskill can show that an easement was necessary in 1948 because any other access through the remainder of the Weatherhead tract was not feasible, and if MacCaskill can further show great present necessity for such an easement, he will have established a prima facie case for the easement.[4]

As noted above, the questions of past and present necessity are factual, and the facts are in sharp dispute. MacCaskill has submitted an affidavit from a civil engineer, stating that construction of an alternate access across the Gruener property would cost more than $500,000. He also has submitted the minutes of a Ketchum City Council meeting, at which a proposed roadway across the Gruener property was disapproved because the grade would be too steep to meet city specifications. The Ebberts and Siegels, though not providing specific cost figures, argue that several alternative routes are feasible. They further contend that the City Council denied permission for the proposed roadway not because the route was unfeasible, but because of other defects in the application. In addition, the parties also have debated what damage an easement might cause to the Ebbert property. MacCaskill's engineer has averred that a roadway using the proposed route could be constructed within a thirty-foot easement in compliance with city regulations. Opposing affidavits indicate that the roadway could not be contained within a thirty-foot easement, that it would occupy a substantial portion of the servient property, and that it could interfere with the Ebberts' access to their home.

Upon this record, we are constrained to hold—as did the district judge when he studied the condemnation issue—that genuine issues of material fact exist. Summary judgment is inappropriate. Neither party has demonstrated as a matter of law that an easement by necessity should or should not be recognized. The case must be remanded for findings as to necessity at the time of severance and great present necessity, in conformity with this opinion. In addition, the Ebberts shall be entitled, if MacCaskill can make out a prima facie case, to rebut the claim of easement through evidence that any easement by necessity has been explicitly bargained away.

---

**4.** The defendants argue that any right to an easement by necessity across the Ebbert property was lost by merger when lots 2742 and 2744, and portions of lots 29 and 30, came under Gruener's common ownership. We disagree. The doctrine of merger applies where the holder of the easement acquires an ownership interest in the servient estate. CUNNINGHAM, § 8.12. *See also* 25 AM.JUR.2D *Easements* § 108 (1966). The servient estate asserted here is the Ebbert property. Gruener never acquired an interest in that property. Admittedly, any easement by necessity ceases when the necessity no longer exists—*e.g.,* when the easement owner acquires another access by purchasing adjoining property. *Id.* at § 106. But the question whether the acquisition by Gruener of portions of lots 29 and 30 made an easement across the Ebbert property unnecessary turns on the same facts that will determine the presence or absence of necessity at the time of severance. Consequently, we do not deem the Gruener transactions on lots 29 and 30 to be dispositive of the issues in this case.

The partial summary judgment is reversed. Costs, exclusive of attorney fees (which have not been requested), are awarded to appellant MacCaskill.

WALTERS, C.J., and SWANSTROM, J., concur.