887 P.2d 49

**B & J DEVELOPMENT AND INVESTMENT, INC., a Florida corporation, Plaintiff–Counterdefendant–Appellant,**

v.

**Ruby PARSONS d/b/a Victor Steak Bank, Defendant–Counterclaimant–Respondent,**

and

**John Does I–V, Defendant–Respondent.**

No. 21006.

Court of Appeals of Idaho.

Dec. 16, 1994.

Rehearing Denied Dec. 16, 1994.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for appellant. James K. Slavens, argued.

Hopkins, Roden, Crockett, Hansen & Hoopes, Idaho Falls, for respondent. David H. Shipman, argued.

## SUBSTITUTE OPINION

THE COURT'S PRIOR OPINION DATED 11/07/94, IS HEREBY WITHDRAWN.

WALTERS, Chief Judge.

B & J Development and Investment, Inc., (B & J) appeals from a district court's judgment which held that Ruby Parsons (Parsons), d/b/a the Victor Steak Bank, obtained an easement by necessity across B & J's property. B & J also challenges the district court's failure to quiet title as against any of Parsons' claims or to award damages to B & J associated with Parsons' alleged trespass on B & J's property. For the reasons explained below, we reverse the judgment and remand this case to the district court for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

B & J owns a parcel of land (the Store Property) in the southwest corner of the intersection of a state highway and Main Street in Victor, Idaho. The state highway forms the north boundary of the Store Property, and Main Street forms the east boundary. Located on the Store Property are a Kwikway Store at the intersection corner, and a storage shed and a laundromat to the west of the Kwikway Store, fronting on the state highway.

Parsons owns a lot (the Bank Property) which is located fifty feet to the south of the intersection of the state highway and Main Street. She acquired the Bank Property in 1981 by purchase from the City of Victor. The Bank Property is rectangular with dimensions of approximately thirty feet by one-hundred feet. The north one-hundred feet of

this property adjoins the south boundary of the Store Property; the easterly, thirty-foot boundary is adjacent to Main Street; the westerly boundary of thirty feet also adjoins the Store Property; and the south boundary of one-hundred feet is a common boundary with residential property owned by a Mr. Petzold.

Parsons operates a restaurant on her property, doing business as the Victor Steak Bank. The restaurant building is approximately twenty-six feet by sixty-eight feet, fronting on Main Street. Directly to the west (rear) of the restaurant building is the remainder of the Bank Property—a parcel of land approximately thirty-two feet by thirty feet. This parcel is considered the back lot of the restaurant business and is used to access the business from the rear of the building. There is a four-foot strip of land between the restaurant building and the Petzold property. Access to the back lot of the Bank Property over the four-foot strip along the southern side of the restaurant is blocked by a stairwell to the basement door of the restaurant building.

To reach the back lot or west side of the Bank Property, Parsons has routinely crossed over the Store Property between the laundromat and the storage shed. The use of this route across the Store Property, to access the Bank Property, is the crux of the dispute in this case. Resolution of this issue requires a summary of the historical ownership of both properties.

Prior to March 10, 1920, the Bank Property, the Store Property, and Mr. Petzold's residential property were a single parcel under the ownership of Benjamin Blodgett and C.M. Hatch. On March 10, 1920, Blodgett and Hatch severed the Bank Property from the remaining property by deeding the Bank Property to Victor State Bank. At that time, the Bank Property was surrounded on three sides—the north, the west and the south—by the other property retained by Blodgett and Hatch; however, the east side of the Bank Property fronted on Main Street. Later, Petzold's property, lying south of the Bank Property, was also severed from the Store Property. In the summer of 1920, some months after the Bank Property was severed

from the Store Property, the Victor State Bank constructed a building on the Bank Property. This building was later renovated by Parsons for her restaurant.

In 1966, Donald E. Lauritzen purchased the Store Property. During the time Lauritzen owned the Store Property, he gave Parsons permission to access the back of the Bank Property by traveling across the Store Property. In 1981, Lauritzen sold the Store Property to Edwin Allen. In 1983, Allen sold it to Gary Grandy who, in 1986, sold it to Robert Bartholomew. Finally, in 1991, Bartholomew sold the Store Property to B & J.

Prior to Parsons' purchase of the Bank Property, that property was owned by the City of Victor. The Bank Property was used to house the city's fire trucks and snow plows. Parsons testified that when she acquired the Bank Property it was possible to drive vehicles from Main Street, through the front of the building, to the back door of the building. She also testified that it was possible to walk through the building out to the back of the lot. Thus, access to the lot behind the building existed without crossing the Store Property. After Parsons purchased the Bank Property, the building was renovated to accommodate a restaurant business. The renovations included: (1) blocking off the garage door in the front of the building on Main Street and reducing the opening to a normal size entrance door; (2) closing an entrance into the building from the south side; (3) constructing walls and narrow hallways inside the building; and (4) installing propane gas, a wood stove, and restaurant equipment and facilities.

B & J filed an action for damages, claiming Parsons had trespassed on its property. B & J's claim stemmed from events which took place in the summer of 1991, when B & J parked an automobile on the northern part of the Store Property and blocked the route Parsons and her vendors used to access the back lot of the Bank Property. The car remained in this location for two months until Parsons had a wrecking company remove the car to another location on the Store Property so she could gain access to the back lot of her restaurant. The Teton County Sheriff's Department issued a citation to Par-

sons for criminal trespass. This charge was later dismissed. B. & J again parked a car on its property, blocking the access to the Bank Property across the Store Property. Again, Parsons had the wrecking company remove the car to another location on the Store Property.

B & J then filed this trespass action. Parsons counterclaimed, alleging she was entitled to an easement. Following a court trial, the district court ruled in favor of Parsons, holding that she had established a right to an easement by necessity. As a result of the ruling, the district court did not decide B & J's trespass claim.

### ISSUES

B & J raises the following issues on appeal: (1) whether Parsons met her burden of proof establishing that she is entitled to an easement by necessity across the Store Property; (2) whether Parsons trespassed on B & J's property and, if so, what damages would be associated with that trespass; (3) whether the trial court properly ordered B & J to pay Parsons' costs as the prevailing party; and (4) whether B & J is entitled to costs and attorney fees on appeal.

In response, Parsons counters that the district court's judgment should be affirmed. She further argues that if the easement by necessity is not upheld, an easement by implication should be found. Finally, Parsons also seeks an award of attorney fees and costs for responding to this appeal.

### ANALYSIS

■ The dispositive issue in this case is whether the district court properly found that Parsons had an easement by necessity across the Store Property. To establish an easement by necessity, the claimant must prove the following elements: (1) that the dominant parcel and the servient parcel were once part of a larger tract under common ownership; (2) that the necessity for the easement claimed over the servient estate *existed at the time of the severance;* and (3) the present necessity for the claimed easement is great. *MacCaskill v. Ebbert,* 112 Idaho 1115, 1118, 739 P.2d 414, 417 (Ct.App. 1987) (emphasis added). An easement by necessity is a creature of public policy. *Bob Daniels & Sons v. Weaver,* 106 Idaho 535, 543, 681 P.2d 1010, 1018 (Ct.App.1984). Therefore, the easement does not depend on an express mutual agreement. Rather, it arises, and will be recognized, when the three required elements have been established. Establishment of an easement by necessity is not defeated by a contrary expectation harbored by one of the parties. *MacCaskill,* 112 Idaho at 1119, 739 P.2d at 418. It is a question of law. An owner of property, however, cannot create the necessity by his or her own actions. *Cordwell v. Smith,* 105 Idaho 71, 80, 665 P.2d 1081, 1090 (Ct.App. 1983).

■ The record shows that prior to March 10, 1920, both the Store Property and the Bank Property were part of a larger tract under common ownership, that of Benjamin Blodgett and C.M. Hatch. The determinative question then becomes whether the necessity for the easement claimed over the Store Property existed at the time the Bank Property was severed from the Store Property. That is, did the necessity for an easement exist on March 10, 1920, when the Bank Property was deeded to Victor State Bank? The record clearly shows that at the time of severance, access to the back lot of the Bank Property could easily be accomplished from Main Street to the east. The evidence does not show that any structures were located on the Bank Property at the time of the conveyance severing the Bank Property from the original parcel owned by Blodgett and Hatch.[1] Therefore, no easement was neces-

---

1. Parsons suggests for the first time in this case by a petition for rehearing that perhaps the existing building or some other structure may have been located on the Bank Property prior to the severance on March 10, 1920, which would have affected access to the back of the lot; however, no evidence was submitted at trial to establish that fact. According to Parsons, evidence sup-porting this suggestion has been recently discovered. We offer no view on the admissibility or sufficiency of that evidence, since it has not been considered by the trial court in the first instance. Whether the trial court should consider this "newly discovered" evidence as grounds for a new trial is a matter for that court to determine

sary at the time the properties were severed. Furthermore, the record demonstrates that erection of the building on the Bank Property and the subsequent remodeling of the building by Parsons created the necessity for the claimed easement across the Store Property. in contravention of the rule stated in *Cordwell, supra.* Accordingly, we hold that Parsons did not meet her burden of proof establishing entitlement to an easement by necessity. We, therefore, reverse the district court's holding to the contrary.

Parsons contends that if this Court does not uphold the district court's ruling that an easement by necessity exists, we should find that an easement exists by implication. However, this issue was neither presented to nor decided by the trial court, therefore, we will not address it for the first time on appeal. *State v. Russell,* 122 Idaho 488, 490, 835 P.2d 1299, 1301 (1992); *Whitehawk v. State,* 119 Idaho 168, 170, 804 P.2d 341, 343 (Ct.App.1991).

Because the district court found an easement by necessity, the court did not address B & J's claim of trespass and related damages. Given our reversal of the trial judge's decision, we remand this case to the district court for a determination of the trespass issues.

### CONCLUSION

We reverse the district court's judgment that an easement by necessity was created over the Store Property to the Bank Property. The case is remanded to the district court for a determination of the trespass issues. Costs to appellant, B & J. No attorney fees are awarded on appeal.

LANSING and PERRY, JJ., concur.

in the event of a proper motion following re-