The Bluffs Owners Association, Inc. ("the Association"), appeals from a summary judgment entered in favor of Curtis L.V. Adams II in an action arising from a dispute over Adams's access to his property.
Adams owns a parcel of undeveloped riverfront property situated in a residential development known as "The Bluffs," which is located on Patrick's Landing Road in Baldwin County. The property located within The Bluffs development is subject to certain restrictive covenants.[1] The Bluffs originally contained 418 acres owned by George R. Irvine, Jr., who developed the residential area along the river and intended that a designated "common area" would be used by all residents of The Bluffs for picnics and other outdoor recreational activities. When the last parcel was sold, Irvine deeded the common area, which contains a pavilion, a boat launch, and a pier, to the Association. The Association is a nonprofit corporation whose members are owners of the land located within The Bluffs.
In July 1999, Adams acquired approximately 39 acres of land that is bordered to the south by Patrick's Landing Road, and the common area owned by the Association at the point where the common area abuts the Tensaw River. The Tensaw River runs along the western boundary of Adams's land, and the north border of Adams's land contains a fairly extensive area of wetlands and swamp. The eastern boundary of Adams's property abuts a separate lot owned by another member of the Association. The southern border of Adams's property contains a steep bluff; at the top of that bluff is nearly 1,500 feet of frontage to Patrick's Landing Road, the main access road for all landowners in The Bluffs. Much of the interior of Adams's property is occupied by wetlands and swamps.
During the spring of 2002, Adams hired a contractor to build a pier on a portion of his land. Until this time, Adams had accessed the riverfront portion of his land by driving through the common area. In 2002, Irvine was made aware that the workers hired by Adams's contractor had been "camping" in the common area and had created a drive across the common area while working for Adams. One of the applicable restrictive covenants governing the use of the common area prohibited anyone from camping or living in a tent in the common area. Brenda and Gene Harris, who are both members and officers of the Association, telephoned Adams to complain about the workers' improper use of the common area.
On June 6, 2002, the Association held a landowners' meeting during which the use of the common area of The Bluffs was discussed. A majority of the landowners voted to require all landowners to access their parcels in the future only from Patrick's Landing Road. After Adams objected to the vote held at the June 2002 meeting, another meeting was held in January 2003; at that meeting, a majority of the landowners adopted a similar motion.
On July 15, 2002, Adams filed a complaint against the Harrises and the Association *Page 377 
seeking an injunction to prevent interference with access to his land. The trial court entered a temporary restraining order, which the parties later agreed would remain in effect until a final hearing. The Association and the Harrises then answered the complaint. Pursuant to a motion by Adams, the trial court made a physical inspection of Adams's parcel of property and the Association's common area. Adams filed a motion for a summary judgment on July 7, 2003. The following month, the Association and the Harrises filed a number of affidavits and portions of depositions in response to Adams's motion for a summary judgment. On September 29, 2003, the trial court entered a summary judgment in favor of Adams. That judgment states, in pertinent part:
 "8. This Court has personally viewed the subject property, walked along the bluffs on the interior portion of Adams'[s] property, viewed the cypress swamp, the wetlands and the `river lane' bordering the Tensaw River. The topography of the subject property is such that Adams has no reasonable alternative access to the waterfront portion of his lot [except] to access [it] across the common area. The river frontage is of significant value for the reasonable use and enjoyment of the property by Adams. The `river lane' frontage along the Tensaw River would otherwise be of no use or value to Adams without reasonable access to it.
 "9. It is this Court's opinion that to require Adams to construct a road down or across the relatively steep face of the bluff on his property, to seek the requisite permits and to fill in the natural wetlands which exist between the bluff and his river frontage, both of which are important natural features of the property, is unreasonable and unsupported by the evidence presented to the Court.
 "10. It is the opinion of this Court that Adams has established [an] easement both by necessity and by implication from Patrick's Landing Road, across the common area to the river frontage of his property."
The Association filed a timely appeal.[2]
 "An appellate court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. Pryor v. Brown Root USA, Inc., 674 So.2d 45, 47 (Ala. 1995); Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact. Id. In determining whether the evidence creates a genuine issue of material fact, this court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala. 1993). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably *Page 378 
infer the existence of the fact sought to be proved.'"
Millican v. McKinney, 886 So.2d 841, 843 (Ala.Civ.App. 2003) (quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989)). Additionally, "[o]ur review is further subject to the caveat that [we] must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant." Brewer v. Woodall,608 So.2d 370, 372 (Ala. 1992).
Easements in Alabama have traditionally been created in one of three ways: by conveyance, by prescription, or by adverse possession. See Cleek v. Povia, 515 So.2d 1246, 1247 (Ala. 1987). Our Supreme Court recognized several other methods of creating easements in Helms v. Tullis, 398 So.2d 253 (Ala. 1981): by reservation or exception, by implication, by necessity, by contract, or by reference to maps and boundaries. Helms,398 So.2d at 255. In this case, Adams claimed and the trial court specifically determined that Adams had proven the existence of an easement by necessity and by implication. The Association asserts that Adams did not prove the existence of either type of easement and that the trial court, therefore, erred in entering a summary judgment in favor of Adams.
Our Supreme Court has stated:
 "`If one has a way through his own land, he cannot impose a "way of necessity" through his neighbor's land, unless his own way is not reasonably adequate or its cost is prohibitive. Mere inconvenience or mere cost, as the basis for using another's land to get access to one's own property, falls short of meeting this test.'"
Ex parte Cater, 772 So.2d 1117, 1119 (Ala. 2000) (quotingOyler v. Gilliland, 382 So.2d 517, 519 (Ala. 1980) (citations omitted)). Under Alabama law, in determining whether to grant an easement by necessity, the issue is not whether the right-of-way sought is, of all possible routes, the nearest and most convenient means to access to the property; instead, the landowner seeking the easement must show that any other alternate-access route would require unreasonable expense disproportionate to the value of the property. Cater,772 So.2d at 1121-22. In Cater, our Supreme Court concluded that the trial court erred in rendering a judgment declaring an easement by necessity when the appropriate showing had not been made.Compare Walker v. Maddox, 708 So.2d 197 (Ala.Civ.App. 1997) (holding that landowner who undisputedly lacked frontage on any publicly traveled roadway had established entitlement to an easement by necessity).
Adams offered neither evidence tending to prove that building a road across his own land was prohibitively expensive nor evidence tending to show that the only means of access to the riverfront portion of his property was through the common area. In fact, he testified by deposition that he had not even considered the possibility of building an access road on his property. Based on the facts presented to the trial court, we conclude that Adams did not demonstrate that he was entitled to a judgment awarding him an easement by necessity.
To prove entitlement to an easement by implication, a landowner must show that his or her parcel of property had original unity of ownership with the land through which the easement is sought.Helms, 398 So.2d at 255. Additionally, the use must be open, visible, continuous, and reasonably necessary to the estate granted. Id. "The implication is that the parties implied such an easement because the grantee, having seen the use the grantor made of the property, can reasonably expect *Page 379 
a continuance of the former manner of use." Helms,398 So.2d at 255-56. Although Adams stated that during his four years of ownership before this action was initiated, he had driven across the common area to reach the riverfront portion of his property and testified that the 1999 sales brochure indicated that an old river lane ran alongside and parallel to the riverfront portion of his property, Adams offered no evidence to show that the route he used through the common area was reasonably necessary.
Specifically, in this case, Adams failed to show that there was no other route to reasonably access his river frontage. Adams admitted that his parcel of property contained nearly 1,500 feet of frontage along Patrick's Landing Road, which is the main access road for all other landowners in The Bluffs. Adams also stated that he had never considered building a road or driveway on his property because it "was not something I want to do [or] care to do." On the other hand, Adams stated that he had spent at least $12,000 building piers on his riverfront and $8,000 building an elevated walkway through a portion of the wetlands on his property. The Association proffered evidence tending to show that Adams could connect the river frontage of his property to The Bluffs' main road by simply building a driveway down the side of his property for a cost of about $10,000. Additionally, although Adams stated that he had always accessed his property by driving across the common area, he admitted that he had owned the property for only four years at the time he filed his complaint and that he had no knowledge of any past use of that method of accessing the land.
Although Adams proved that his use of the common area as a means of accessing his property's river frontage had been open and continuous during his four-year ownership of the property, he failed to prove that his use of the common area was reasonably necessary to access his property. Under Alabama law, an easement by implication is only created when a genuine necessity exists; mere convenience is not enough. See Helms, 398 So.2d at 255. Reviewing the record in a light most favorable to the nonmovant, as we are required to do, we conclude that Adams failed to prove the existence of a genuine necessity so that an easement by implication was established and, therefore, that the trial court erred in entering a summary judgment awarding Adams an easement by implication.
The trial court improperly applied the law of easements to the facts presented to it. We therefore reverse the judgment and remand the cause for further proceedings or a judgment consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] One of the pertinent restrictive covenants states that no easements may be granted other than for construction or maintenance purposes until January 1, 2015. See Armbrust v.Golden, 594 So.2d 64 (Ala. 1992).
[2] The Harrises are not parties to this appeal.