**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| THADDEUS BARTKOWSKI, III AND CRYSTAL ANNE CRAWFORD, | : | No. 60 MAP 2018 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellees | : | Court at Nos. 432 EDA 2017 and 521 |
| | : | EDA 2017 dated January 22, 2018, |
| | : | Reconsideration denied March 22, |
| v. | : | 2018, Affirming in part and Vacating in |
| | : | part the Judgment of the Chester |
| | : | County Court of Common Pleas, Civil |
| KENNETH RAMONDO AND THERESE- | : | Division, at No. 15-05842 entered |
| CECILIA RAMONDO, | : | January 27, 2017 and Remanding. |
| | : | |
| Appellants | : | ARGUED:  April 11, 2019 |

**OPINION**

**JUSTICE WECHT**                                    **DECIDED:  October 31, 2019**

We granted allowance of appeal to consider whether a landowner must prove impossibility of alternative access arising from zoning and regulatory prohibitions or conditions of the land in order to establish an easement by necessity.

The facts pertinent to this appeal are not in dispute.  Kenneth Ramondo and Theresa-Cecelia Ramondo ("the Ramondos") purchased a property in Chester County (the "Ramondo property") on July 16, 1991.  The Ramondo property is of a type known as a "flag lot," because it is consists of both a main portion (the "flag") and a narrow strip (the "pole") that connects the main portion to a public street.[1]  The pole portion of the

---

[1]     *See* DENISE L. EVANS & O. WILLIAM EVANS, THE COMPLETE REAL ESTATE ENCYCLOPEDIA 172 (2007) (defining "flag lot" as "[a] parcel of land shaped like a flag, with a narrow strip providing access to a public street or waterway and the bulk of the property containing no frontage.")

Ramondo property is approximately twenty-five feet wide and opens onto Garrett Mill Road. The Ramondo pole extends six hundred feet from Garrett Mill Road to the main portion of the Ramondo property—the flag portion—which is approximately 5.62 acres. Thaddeus J. Bartkowski, III, and Crystal Anne Crawford ("the Bartkowskis") bought the neighboring property ("the Bartkowski property"), also a flag lot, on December 11, 2012. The pole of the Bartkowski property, also measuring twenty-five feet wide, abuts and runs parallel with the Ramondos' pole. The flag portion of the Bartkowski property is approximately 5.25 acres.[2]

The portion of land at issue in this appeal involves the adjoining Ramondo and Bartkowski poles, upon which the Ramondos constructed a driveway (the "Ramondo driveway") that provides them access to Garrett Mill Road. The Ramondo driveway begins on the Bartkowski pole, and extends up that pole for approximately three hundred feet. At that point, the Ramondo driveway crosses onto the Ramondo pole and continues on that pole to the main portion of the Ramondo property. The Bartkowskis use neither their pole nor the Ramondo pole to access their own flag portion, as they instead make use of an earlier-granted easement which passes over an adjacent property.

At one time, the Ramondo property and the Bartkowski property were both owned by a common grantor, Adrian and Margaret Teaf ("the Teafs"). In 1967, the Teafs recorded a subdivision map which laid out, among other properties, the Ramondo and Bartkowski parcels.[3] Both parcels were vacant, wooded lots, and neither pole contained a driveway providing access to the flag portions of these parcels. On April 19, 1968, the Teafs conveyed the Bartkowski property to Herbert and Margaret Mansmann ("the Mansmanns"). The Mansmanns did not construct a driveway on their pole. Rather, the

---

[2]    The record before us includes a survey that depicts the properties. *See* Exh. 3. For the reader's convenience, we have reproduced the portion of the survey that shows the Ramondo and Bartkowski properties as an Appendix to this opinion.
[3]    *See* Appendix.

Mansmanns, and all subsequent owners of the Bartkowski property, shared a driveway with the owners of the parcel south of the flag portion of the Bartkowski property, the Coulstons. The Coulston driveway is located on the side of the Coulston property farthest from the Bartkowski pole. As noted, an easement for this driveway use was recorded prior to the Bartkowskis' arrival.

The Mansmanns built a single-family home on the Bartkowski property in 1969 and still lived there when the Ramondos purchased the neighboring Ramondo property in 1991. In order to build a home on the vacant property, the Ramondos first needed to construct a driveway. Before doing so, Kenneth Ramondo invited his neighbors, including the Coulstons and the Mansmanns, to "walk the property line to see if anybody had a problem with where the driveway was going." Stipulated Facts, 2/27/2016, at 6 (citing N.T., 8/17/2015, at 87). None of the neighbors objected to the Ramondos' proposed placement of the driveway. Nonetheless, although the lower portion of the Ramondo driveway would traverse the Mansmanns' property, no easement securing such access was executed or recorded.

The Ramondos completed construction of their driveway in 1992 and their home in 1993. The Ramondos placed the driveway in its current location due to numerous legal and physical impediments that precluded the placement of the driveway entirely on their pole. First, a stream runs through the lower portion of the Ramondo pole and into Ridley Creek, which flows across from and parallel to Garrett Mill Road. Second, the area in which the stream crosses the Ramondo pole is a flood plain. Third, a utility pole sits just off Garrett Mill Road in the middle of the Ramondo pole and services a utility line that runs under the Ramondo driveway. Fourth, portions of the Ramondo pole are very steeply sloped.

In 1995, the Ramondos paved the driveway, which had previously been gravel-surfaced. The Ramondos resurfaced the driveway in 2000 and installed a guardrail along the edge of the steep slope. In 1993, and again in 2004, the Ramondos executed mortgages on their property in favor of Barclays and USAA, respectively. Neither of the legal descriptions of the Ramondo property attached to the mortgage documents included the portion of the Ramondo driveway that is situated on the Bartkowski pole.

In 2003, the Mansmanns conveyed the Bartkowski property to F. Ramondo, Inc., the Ramondo family's business. During the years that F. Ramondo, Inc. owned the property, Kenneth Ramondo was an officer of the company. On May 2, 2007, F. Ramondo, Inc. conveyed the property to James and Marianne Bianco ("the Biancos"). The Biancos conveyed the property to the Bartkowskis on December 11, 2012. When the Bartkowskis purchased their property, they were aware that the Ramondos used the Ramondo driveway to access their home. The Bartkowskis also knew that the Biancos had used the shared Coulston driveway to access the home on the Bartkowski property.[4]

In 2013, the Bartkowskis approached the Ramondos about the Ramondo driveway's encroachment upon the Bartkowskis' pole. On June 30, 2015, the Bartkowskis, through their attorney, sent the Ramondos a cease and desist letter demanding that the Ramondos stop using the portion of the Ramondo driveway that is on the Bartkowskis' pole.

On July 16, 2015, the Bartkowskis filed an action in ejectment and trespass, alleging that the Ramondos improperly constructed their driveway on the Bartkowski property. On July 31, 2015, the Ramondos filed a counterclaim alleging that they acquired title to the disputed area by adverse possession or through the doctrine of consentable

---

[4]     Specifically, in 2005, the Coulstons granted a non-exclusive access easement in favor of F. Ramondo Inc. and its successors to use the Coulston driveway to access the Bartkowski property.

lines. Alternatively, the Ramondos claimed a property interest in the driveway by way of an easement by prescription, necessity, or implication.

The Bartkowskis and Ramondos decided to forego a trial, agreeing instead to submit a stipulated fact record and joint exhibits, as well as memoranda of law, to the court. The Bartkowskis submitted a site survey which identified in detail the Bartkowski and Ramondo properties and their respective poles, as well as the location of the Ramondo driveway. Both parties submitted expert reports.

The Ramondos' expert, Daniel Malloy, P.E., a civil engineer, concluded that the current location of the Ramondo driveway is the "only method to reach their home." Exh. 19 at 1. Malloy noted that, in some places along the Ramondo pole, the slope is a 50% grade, which leaves "a portion of the Ramondo's [pole] sit[ting] more than ten feet below the elevation of the existing driveway." *Id.* In order to install a driveway on the Ramondos' pole, Malloy opined, it would be necessary to either "construct the driveway at the lower grade of their property or elevate their driveway to remain close to the elevation of the driveway they currently use." *Id.* at 2. Neither of these options are viable solutions, Malloy explained, because of environmental and zoning regulations.

A thirty-foot wide stream runs through the lower portion of the Ramondos' pole before flowing under Garrett Mill Road, creating a flood plain in the entire area. Malloy opined that constructing the driveway at the lower grade would require installation of a retaining wall on the Ramondo pole in order to comply with Willistown Township zoning ordinances regarding wetlands and prohibitive slopes.[5] Construction of a retaining wall would in turn require the placement of fill into the floodplain, which is prohibited both by township ordinances and by the Federal Emergency Management Agency (FEMA). *Id.*

---

[5]     Pursuant to the Willistown Township's environmental and zoning codes, Malloy observed, construction of a driveway is not a permitted use on land within 25 feet of a body of water or wetland or in areas with slopes in excess of a 15% grade. *See* Exh. 19 at 2.

at 3. These same ordinances and regulations, Malloy opined, would likewise prohibit the Ramondos from elevating their pole to the elevation of the Bartkowski pole. The only option, therefore, would be to relocate the stream.

Malloy posited that, in order to relocate the stream onto the neighboring property, the Ramondos would need the approval not only of their neighbor, but also of the township and the Pennsylvania Department of Environmental Protection ("DEP"). This approval would be difficult to obtain, Malloy explained, because neither the township nor the state allows streams to be relocated unless a "significant reason" exists to do so. *Id.* at 2. Malloy posited that the construction of a driveway, especially where one exists in close proximity, "does not fall into a category the State or Township would consider a significant reason" to relocate a waterway. *Id.* Building a bridge over the stream, Malloy contended, would implicate many of the same ordinances and environmental concerns. In total, Malloy summarized the extensive number of permits that the Ramondos would be required to obtain from both the township and the DEP:

> They include an Erosion and Sedimentation permit, Highway Occupancy Permit to connect to Garrett Mill [Road], a PADEP permit GP7 (minor road crossing) and possibly a GP 15 (residential construction in wetlands). The Township will require zoning relief since the construction of a driveway in steep slopes, flood plains, and/or riparian buffer is prohibited by Willistown Township's Environmental Ordinance (Section 73) and by the Zoning Code (Section 119).

*Id.*

Finally, even assuming that all the environmental and zoning issues could be overcome, which Malloy characterized as "highly unlikely," *see id.* at 3, constructing a driveway within the Ramondo pole also would require the relocation of the utility pole. Malloy estimated this cost alone at approximately $10,000. For all of these reasons, Malloy concluded that "the amount of regulatory relief and permitting needed to install a new driveway on the Ramondos' property from the State and the Township will be

extremely extensive making the construction of a parallel driveway all but impossible." *Id.* Additionally, Malloy posited that "[t]he amount of engineering required to satisfy the permitting agencies will be a significant percentage of the cost to construct the new driveway (which in itself will be prohibitive)." *Id.* Malloy further advised that "it will be many, many months, if not years before the approvals may be obtain[ed], if at all," and opined that "[i]t is very likely that all the required permits would never be approved." *Id.*[6]

The Bartkowskis' expert, Denny L. Howell, P.E., a civil engineer, issued a rebuttal report challenging Malloy's conclusions. Howell acknowledged that the terrain of the Ramondos' pole is "steep," and agreed with Malloy that construction thereon "would require relief from Willistown [o]rdinances as it pertains to steep slope disturbance, riparian buffer disturbance as well as flood plain disturbance." Exh. 23 at 1. Despite these obstacles, Howell concluded that "this relief is not unreasonable." *Id.* Howell posited that, "[s]etting aside the necessary [o]rdinance relief . . . construction of the driveway is feasible," and estimated that the construction cost would be approximately $75,000. *Id.* On the likelihood that the Ramondos could obtain the necessary environmental and zoning relief, Howell concluded that "it is well within reason to expect that these variances could be obtained." *Id.* at 2.

By order dated September 19, 2016, the trial court found in favor of the Ramondos on the counterclaim in which they asserted that they had obtained an easement by implication.[7] As a result, the court ruled against the Bartkowskis on their claims of

---

[6]    Although he could not state conclusively, Malloy noted that additional environmental hurdles would be likely if bog turtles, which are common to Chester County but the presence of which may be observed only during two months in the spring, are discovered in the stream.

[7]    The granting of an easement by implication is based upon the theory that "continuous use of a permanent right-of-way gives rise to the implication that the parties intended that such use would continue, notwithstanding the absence of necessity for the use." Findings, 9/19/2016, at 19 (citing *Phillippi v. Knotter*, 748 A.2d 757, 762 (Pa. Super.

ejection and trespass. In support of its order, the court issued Findings of Fact and Conclusions of Law ("Findings"). Of relevance to this appeal, on the Ramondos' claim that they obtained an easement by necessity, the trial court outlined that the party seeking access across the property of another must establish that: "(1) the titles to the alleged dominant and servient properties [were] held by one person; (2) this unity of title [was] severed by a conveyance of one of the tracts[;] and (3) the easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of severance of title and at the time of the exercise of the easement." Findings, 9/19/2016, at 17 (citing *Graff v. Scanlan*, 673 A.2d 1028, 1032 (Pa. Cmwlth. 1996)). Additionally, the trial court emphasized that "[a]n easement by necessity 'is always of *strict necessity*' and never exists as a mere 'matter of convenience.'" *Id.* (quoting *Phillippi v. Knotter*, 748 A.2d 757, 760 (Pa. Super. 2000) (emphasis in original)). The trial court concluded that the Ramondo property was "not landlocked," and that, although the Ramondos presented evidence that gaining approval from the Township to relocate the driveway "may be difficult," the Ramondos did not "demonstrate impossibility and thus necessity." *Id.* at 18.[8]

---

2000)). In order to find an easement by implication, use of the right-of-way must have been occurring prior to severance from a common grantor. The trial court concluded that the Ramondo family had unity of title between 2003 and 2007, during which time F. Ramondo, Inc. (in which Kenneth Ramondo was an officer) was the record owner of the Bartkowski property. Therefore, the trial court reasoned, severance from a common grantor occurred in 2007, when F. Ramondo, Inc. conveyed the Bartkowski property to the Biancos. The trial court ruled that, at that time, the Ramondos had been using the Ramondo driveway for fifteen years in a manner that was "open, visible, permanent and continuous," such that an easement by implication arose and the Biancos, and all subsequent purchasers, took the property subject to the burden of the Ramondo driveway.

[8] The trial court also ruled that the Ramondos did not acquire title through adverse possession because the Mansmanns consented to the placement of the Ramondo driveway, thus destroying the "hostility" element. For this same reason, the court concluded, the Ramondos did not have any easement by prescription. Nor did the

The Bartkowskis filed a post-trial motion challenging the trial court's order, which the trial court denied on January 4, 2017. The Bartkowskis filed a timely notice of appeal and Pa.R.A.P. 1925(b) statement challenging whether the Ramondos met the elements necessary to establish an easement by implication. The Ramondos cross-appealed, disputing the trial court's rulings that they did not have an easement by necessity or that they had not obtained title by the doctrine of consentable lines. On February 22, 2017, the trial court issued its Pa.R.A.P. 1925(a) opinion, adopting, in full, its September 19, 2016 Findings of Facts and Conclusions of Law.

In an unpublished memorandum, a divided panel of the Superior Court affirmed in part and vacated in part. *Bartkowski v. Ramondo*, 432 & 521 EDA 2017, 2018 WL 495213 (Pa. Super. Jan. 22, 2018).[9] On the Ramondos' easement by necessity claim, the Superior Court agreed with the trial court's reasoning to the effect that the Ramondos failed to establish necessity. The Superior Court reasoned that, although the Ramondos' expert opined that construction of a new driveway on the Ramondo pole would be "costly and 'all but impossible,'" the Ramondos did not prove that this could not be done. *Id.* at *6 (quoting Findings, 9/19/2016, at 9). To the contrary, the Superior Court reiterated the Bartkowski expert's proffer that construction of the driveway was "feasible," and held that,

Ramondos acquire title by way of the doctrine of consentable lines, according to the court, because there was no agreement to treat the driveway as the property line.

[9] The panel unanimously agreed that the Ramondos had not obtained title to the disputed portion of the driveway under the doctrine of consentable lines. The panel reversed the trial court's ruling in favor of the Ramondos that they had obtained an easement by implication. The panel rejected the trial court's conclusion that a severance from a common grantor existed in 2007 when F. Ramondo, Inc. conveyed the Bartkowski property to the Biancos. Citing the rule that "[a] corporation is a separate, fictional legal person distinct from its shareholders or employees," the panel concluded that the trial court erred in finding that one entity held both the Bartkowski and Ramondo properties in unity. *Bartkowski*, 2018 WL 495213, at *5 (citing *Missett v. Hub Int'l Pa., LLC*, 6 A.3d 530, 535 (Pa. Super. 2010)).

"because a new driveway is possible, even if difficult and expensive," the trial court did not err in denying the Ramondos claim for an easement by necessity. *Id.*

Judge Bowes dissented on this issue, characterizing the lower portion of the Ramondos' pole as "virtually impassable," due to a "stream, flood plain, utility pole, and a steep slope." *Id.* at *8 (Bowes, J., concurring and dissenting). Summarizing the expert reports, Judge Bowes reasoned that there is no dispute that the Ramondos would need relief from various township ordinances and DEP regulations in order to construct a new driveway on the Ramondo pole. Howell's belief that it would be "feasible" to obtain such regulatory relief was insufficient, in Judge Bowes' opinion, to establish that the multiple permitting and zoning obstacles could be overcome. The key inquiry, Judge Bowes emphasized, is not whether the Ramondos "could possibly get relief" but "whether it is likely or probable that they will." *Id.* at *10. Judge Bowes explained that the myriad of required variances and approvals serve to elevate the Ramondos' claim of necessity above a mere question of convenience.[10]

We granted allowance of appeal in order to consider whether, when seeking to establish an easement by necessity, a landowner must prove impossibility of alternative access arising from zoning and regulatory prohibitions or other conditions. *Bartkowski v. Ramondo*, 195 A.3d 853 (Pa. 2018) (*per curiam*).

The Ramondos argue that the only element at issue in this appeal is whether access upon the Ramondo driveway is necessary. The Ramondos characterize their need for access as one of strict necessity, distinguishing their circumstances from those cases in which this Court or the Superior Court have concluded that a landowner's claim for a particular desired access is one of mere convenience. Brief for Ramondos at 14-15

---

[10] Judge Bowes noted additionally that the necessity existed at the time of severance because the steep slope, stream, and flood plain were all present in 1967 when the Teafs subdivided the property into five lots.

(citing *Schwoyer v. Smith*, 131 A.2d 385 (Pa. 1957); *Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057 (Pa. Super. 2014); *Phillippi*, 748 A.2d 757). The Ramondos maintain that the "regulatory prohibitions" and the "practical and financial impossibility of relocating the stream and driveway," result in their property being landlocked. Brief for Ramondos at 15.

The Ramondos next contend that "requiring landowners who face codified legal impediments to prove with absolute certainty that they could obtain relief from those impediments is not logical and would be a tremendous waste of public and private resources." *Id.* at 16. Rather than imposing such a burden, the Ramondos propose that, when it is undisputed that zoning and regulatory relief is required prior to allowing construction of alternative access, as it is here, the court should find a "*per se* necessity, or at least a presumption of necessity." *Id.* at 19. Upon such a finding, the Ramondos assert, the burden should shift to the servient property owner to prove that relief is available. The Ramondos argue that such burden-shifting frameworks are commonplace in other areas of the law, and they advocate for application of such a framework here. *Id.* at 18-20 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (adopting burden-shifting framework for employment discrimination claims); *Borough of Perkasie v. Moulton Builders, Inc.*, 850 A.2d 778 (Pa. Cmwlth. 2004) (applying burden-shifting framework to conditional use applications in zoning matters)).

Applying these principles, and relying upon their expert's report, the Ramondos maintain that they presented compelling evidence that zoning and regulatory relief is "not reasonably likely." Brief for Ramondos at 21. Like Judge Bowes in dissent, the Ramondos reject the trial court's and Superior Court's reliance upon the Bartkowskis' expert's opinion that alternative access on the Ramondo's pole was "feasible," characterizing that opinion as "unsupported" and "woefully insufficient." *Id.* at 20-21.

Accordingly, the Ramondos ask that we reverse the order of the Superior Court and hold that they have established grounds for an easement by necessity over the Bartkowski property.

In response, the Bartkowskis first assert that the trial court, when presented with competing expert opinions on the physical and legal impediments to constructing a driveway on the Ramondos pole, credited the conclusion of the Bartkowski's expert. Because this credibility determination has support in the record, the Bartkowskis argue, this Court should not disturb it on appeal. Brief for Bartkowskis at 11-13. Moreover, the Bartkowskis contend Howell's opinion is supported by the concept that "waivers and variances exist precisely in order to ensure that properties like the Ramondos' cannot be rendered valueless or inaccessible by a combination of the unique features of the property and restrictive ordinances." *Id.* at 13.

The Bartkowskis next maintain that the Ramondos have waived their claim of necessity based upon their failure to cite or discuss the regulations and ordinances that prohibit them from constructing a driveway on their own pole. Without specific identification of these impediments, the Bartkowskis argue, it is impossible to determine "whether the Ramondos could avoid violation through alternative construction techniques," or whether "the specific environmental regulations complained of existed at the time of the severance of title." *Id.* at 15.

In response to the Ramondos' claim that the burden should shift to the Bartkowskis to prove that relief is available, the Bartkowskis argue, without conceding that they have a burden, that their expert opined that a driveway possibly can be constructed on the Ramondo pole, thus proving that relief is available. As such, the Bartkowskis ask that we

affirm the Superior Court's holding that the Ramondos failed to establish an easement by necessity.[11]

This appeal calls upon us to clarify the requirement of "strict necessity" as it relates to the establishment of an easement by necessity. This is a question of law over which our standard of review is *de novo* and our scope of review is plenary. *JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187, 191 (Pa. 2019).

As noted above, the three fundamental requirements for an easement by necessity are:

> 1) the titles to the alleged dominant and servient properties must have been held by one person; 2) this unity of title must have been severed by a conveyance of one of the tracts; and 3) the easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

*Youst*, 94 A.3d at 1075. We have long recognized that a "right of way from necessity over the land of another . . . is always of strict necessity." *Ogden v. Grove*, 38 Pa. 487, 491 (Pa. 1861) (internal citations and quotation marks omitted). Thus, a right of way never

---

[11] The Bartkowskis fail entirely to address the question upon which we granted review. The Superior Court's decision did not, as the Bartkowskis argue, merely rely upon or defer to the trial court's credibility determinations. See Brief for Bartkowskis at 11. The trial court did not find the Ramondo expert's report to be incredible. Rather, the trial court concluded that, despite the evidence offered by the Ramondos, they did not prove that creating a new driveway on the Ramondo pole was impossible. See Findings, 9/19/2016, at 18 ("[T]he evidence did not demonstrate impossibility and thus necessity."). It was the strict necessity standard that led to the court's conclusion, not a mere finding of fact or determination of credibility.

The Bartkowskis' waiver argument is likewise unconvincing. The parties proceeded on a stipulated fact record, and they did not dispute that constructing a driveway upon the Ramondo pole would face numerous zoning hurdles and environmental restrictions.

The Bartkowskis also argue that a Willistown Township ordinance that requires abutting flag lots to utilize a shared driveway is an unconstitutional taking. We will not address this argument, because neither of the courts below relied upon this ordinance and because it is beyond the scope of our order granting review.

exists "when a man can get to his own property through his own land," and "[c]onvenience is no foundation for the claim." *Id.*

Here, the first two elements have been met. The titles to the Ramondo and Bartkowski properties were once held by a common grantor (the Teafs), and unity of title was severed in 1967 when the Teafs subdivided the land. Thus, the only factual dispute before the trial court concerned whether the Ramondo driveway's encroachment upon the Bartkowski pole was "necessary in order for the [Ramondos] to use [their] land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement." *Youst*, 94 A.3d at 1075.

The question presented hinges not upon whether the Ramondos in fact satisfied this element but, rather, upon the validity of the lower courts' conclusions that the Ramondos did not establish necessity because they failed to prove that constructing a new driveway on their pole "could not be done." *Bartkowski*, 2018 WL 495213, at *6; *see also* Findings, 9/19/2016, at 18 (ruling that the Ramondos did not "demonstrate impossibility and thus necessity"). By equating strict necessity with impossibility, the lower courts increased the Ramondos' burden beyond what this Court previously has required. Our research has not uncovered, nor did either party present, any case from this Court or our intermediate appellate courts holding that a party seeking access across a neighboring property must prove absolute impossibility of alternative access in order to establish strict necessity.

As is evident from our easement by necessity jurisprudence, the concept of strict necessity always is contrasted with the notion of convenience. *See Ogden*, 38 Pa. at 491; *Graff*, 673 A.2d at 1032 ("An easement implied on the grounds of necessity is always of *strict necessity*; it never exists as a mere matter of convenience."). Our precedents provide little insight on the meaning of "necessity" beyond these opposing principles.

Without question, these two concepts—strict necessity and mere convenience—sit at opposite ends of a continuum that encompasses a significant amount of gray area. One scholar has opined that, although the necessity element is the "fulcrum on which way of necessity cases balance," this "seemingly black-and-white concept . . . is really gray." 11 JEFFREY R. SANG, AM. JUR. PROOF OF FACTS 3D 601, § 6 (2019). There is no formulaic or canonical standard that constitutes "strict necessity," leaving each case to turn on its facts.

To require a party to prove utter impossibility of alternative access is to stretch "strict necessity" beyond its intended meaning. This effectively would limit a landowner's entitlement to an easement by necessity to circumstances in which the property is completely surrounded and landlocked by other properties, such that there is literally no means of ingress and egress. This Court has never so held. On this subject, a decision of the Idaho Court of Appeals is particularly instructive. In *MacCaskill v. Ebbert*, 739 P.2d 414 (Idaho Ct. App. 1987), the court was asked to determine whether an easement by necessity may arise where the property is landlocked, not for want of legal access, but because the topographical characteristics of the land make legal access impassable. The court refused to limit the circumstances under which an easement by necessity may arise to landlocked properties, reasoning that, "there are cases where a tract of land, though not totally landlocked in a legal sense, cannot yield a beneficial use because the sole legal access is inadequate for the purposes to which the property naturally might be put." *Id.* at 418. The court continued:

> Obviously, one seeking an easement need not show that a legally available route is absolutely impossible to use. There are few natural obstacles that could not be surmounted by modern engineering if unlimited resources were committed to the task. On the other hand, neither is it sufficient merely to show that the legally available route would be inconvenient or expensive. Rather, an easement by necessity should be granted only if the difficulty or

expense of using the legally available route is so great that it renders the parcel unfit for its reasonably anticipated use.

*Id.* at 419 (citation and emphasis omitted).[12]  We agree with the *MacCaskill* court that literal impossibility of alternative access is an unworkable standard.  As the Idaho court acknowledged, with enough money and modern resources, creation of an alternative means of access can never be considered truly and utterly impossible.

This analysis also comports with other jurisdictions' formulations of "strict necessity."  *See, e.g.*, *Ashby v. Maechling*, 229 P.3d 1210, 1215 (Mont. 2010) ("The element of strict necessity requires that there is no practical access to a public road from the landlocked parcel."); *Beery v. Shinkle*, 193 S.W.3d 435, 441 (Mo. Ct. App. 2006) ("Strict necessity has been interpreted to mean the absence of a reasonably practical way to and from plaintiff's land that the plaintiff has a legally enforceable right to use."); *Thompson v. Whinnery*, 895 P.2d 537, 541 (Colo. 1995) (*en banc*) (internal quotation marks omitted) ("[I]n evaluating whether an easement is necessary for access over difficult terrain[,] we must determine whether there is a practical inability to have access any other way than by a way of necessity."); *Hitchman v. Hudson*, 594 P.2d 851, 858 (Or. Ct. App. 1979) ("An easement of necessity will not be implied where the claimant has other practicable ways of ingress or egress or could obtain the necessary way by a reasonable expenditure").  These descriptions of "strict necessity" demonstrate that the standard is not "hopelessly inelastic for sensible application to varying sets of facts." *Mitchell v. Castellaw*, 246 S.W.2d 163, 168 (Tex. 1952).  Common to these descriptions,

---

[12]    The *MacCaskill* court adopted a "reasonable necessity" standard.  However, the court noted that "the criteria for determining 'reasonable' necessity . . . could not easily be distinguished from those we had postulated for 'strict' necessity." *MacCaskill*, 739 P.2d at 419 n.3.  This sentiment is expressed as well by leading treatise writers, who posit that the difference between the two standards is "greater in theory than in practice," and that "[a]n examination of decisions in this area reveals that, in many cases, the court would reach the same result under either degree-of-necessity test."  Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land § 4:10 (March 2019 Update).

and absent from the reasoning of the courts below in the instant case, is a focus upon the practicability of constructing alternative access. Where it is manifestly impracticable, even though theoretically possible, to create ingress and egress across one's own property, the landowner may establish that a right of way over a neighboring property is "strictly necessary" in the legal sense.

The expense of constructing alternative access may be one of many relevant factors in determining whether access across a neighboring property is "strictly necessary." The Maryland Court of Appeals considered as much, while maintaining a "strict necessity" standard:

> If the cost of constructing a road over one's land as a means of access to the public highway would require unreasonable expense out of proportion to the value of the land, then there exists such necessity for a way over the grantor's land as to justify recognition of a way by implication. But the court will not recognize a way of necessity if another road to the public highway can be made without unreasonable expense, even though the other road may be much less convenient. Mere inconvenience will not be sufficient to justify the finding of a way of necessity.

*Condry v. Laurie*, 41 A.2d 66, 68 (Md. 1945); *see also Bluffs Owners Ass'n, Inc. v. Adams*, 897 So.2d 375, 378 (Ala. Civ. App. 2004) ("[T]he issue is not whether the right-of-way sought is, of all possible routes, the nearest and most convenient means to access . . . the property; instead, the landowner seeking the easement must show that any other alternate-access route would require unreasonable expense disproportionate to the value of the property."); 3 TIFFANY REAL PROPERTY § 794 (3d ed. 2018) ("[I]f the cost of the construction of a road over one's own land, as a means of access to any particular portion thereof, would involve very great expense, out of proportion to the value of the land itself, there is such a necessity for a way over another's land as to justify the recognition of a way of necessity."). These cases demonstrate that, although the cost or difficulty of constructing alternative access may not always, or even often, be sufficient by itself to

warrant burdening another's property, there may be a tipping point at which it becomes manifestly unreasonable to require a party to expend a disproportionate amount of money in order to access a parcel.

We find additional insight in Pennsylvania jurisprudence involving the Private Roads Act ("the Act"),[13] pursuant to which a landowner, in order to access his own property, may petition the court to open a private road across a neighboring property. Although opening a private road and granting an easement by necessity are separate and discrete acts of judicial authority, the parallel inquiry regarding the necessity of the intrusion upon a neighboring property warrants discussion. Under the Act, opening a private road requires a determination "that such road is necessary." 36 P.S. § 2732. The Act does not define the word "necessary," but, in an oft-quoted case, our Superior Court held:

> While the Act does not require an absolute necessity, such as being completely landlocked, the mere inconvenience in the use of an existing road is not enough. The existing road must be of a limited privilege, or extremely difficult and burdensome in its use to warrant the appropriation of another more convenient course. In short, the Act is said to require the strictest necessity.

*Application of Little*, 119 A.2d 587, 589 (Pa. Super. 1956) (internal citations omitted).

This Court later affirmed this standard, holding that a private road may be opened across the land of another only upon a finding of the "strictest necessity." *In re Private Road in Speers Boro, II, Washington Cty.*, 11 A.3d 902, 906 (Pa. 2011). In *Speers Boro*, the landowners had full access to their property by river, but had land access only across a neighboring property. In determining whether opening a private road was necessary under such circumstances, we concluded that a court must consider all "available means of access to the property," but emphasized that a navigable waterway does not equate to

---

[13] 36 P.S. §§ 2731-2891.

road access. *Id.* Thus, we explained that, on remand, the parties may offer evidence to show why water access was or was not a sufficient means of access to the property. *Id.* In light of this conclusion, which we reached under a similar "strict necessity" standard, it is clear that we rejected the proposition that necessity only exists where access to the property is literally impossible. *See also In re Laying Out & Opening Private Rd. in Sullivan Twp., Tioga Cnty.*, 964 A.2d 495, 503 (Pa. Cmwlth. 2009) (considering multiple factors, including the topography of the land, the cost, and environmental consequences of constructing alternative access in determining whether opening a private road was strictly necessary).

To be sure, the property rights of those owning proposed servient estates are not to be taken lightly, and we caution against any contrary conclusion. It is immaterial, for instance, whether a right-of-way would appear to have a minimal impact upon the use of the servient estate, or whether its owner offers a persuasive reason for wishing to exclude other individuals from the property. All property owners are presumptively entitled to the quiet use and enjoyment of their entire properties; such rights are inherent to our understanding of property ownership. *See, e.g., Willcox v. Penn Mut. Life Ins. Co.*, 55 A.2d 521, 528 (Pa. 1947) (quoting *Wynehamer v. People*, 13 N.Y. 378, 433 (N.Y. 1856)) (property is "the right of any person to possess, use, enjoy and dispose of a thing"). The burden to establish the necessity for an easement across the property of one's neighbor falls squarely upon on the shoulders of the party seeking it. We observe only that, once that necessity is established, the recognition of an easement is essential to ensure that the utility and value of the dominant property are not wholly extinguished.

Based on the foregoing analysis, we hold that the courts below erred in holding that a landowner must establish impossibility of alternative access before a court will grant an easement by necessity. To be sure, the strict necessity standard remains a daunting

hurdle to overcome for a landowner seeking an easement by necessity. Given the sanctity of property rights, this is as it should be. Nevertheless, neither our case law, nor the persuasive reasoning from other states imposing a "strict necessity" standard, supports a requirement that a landowner prove utter impossibility of alternative access. Such a burden risks becoming insurmountable, and, as such, as unworkable as it is unjust.

Determining whether a landowner has established necessity is a fact-intensive question, which defies a one-size-fits-all, bright-line standard.[14] The central inquiry is whether, absent the recognition of an easement, the proposed dominant estate will be left without a means of ingress and egress, rendering the property inaccessible and, thus, unusable. *See, e.g.*, *Bodman v. Bodman*, 321 A.2d 910, 912 (Pa. 1974) ("An easement by necessity may be created when after severance from adjoining property, a piece of land is without access to a public highway."). A court must evaluate the asserted necessity by assessing whether this untenable outcome will result in practice, not merely by asking whether some remote alternative is hypothetically possible in the abstract. Each case will require individualized consideration of multiple factors, including, but not limited to: the existence of zoning restrictions and the likelihood that the party can obtain the necessary variances or exceptions; the existence of state or federal regulations that prohibit certain uses of the land in question; the topography of the land and the practicability of constructing alternative access; the environmental consequences of construction; the costs involved; and, of course, whether and to what extent these impediments existed at the time of severance.[15] This list of factors is non-exclusive, as

---

[14] For this reason, we reject the Ramondos' suggestion that we should adopt a *per se* finding or presumption of necessity when a property owner faces zoning or regulatory obstacles in constructing alternative access. *See* Brief for Ramondos at 19.

[15] Because our present analysis relates solely to whether strict necessity requires a showing of impossibility as a matter of law, we need not decide the factual question of

future cases may well present additional circumstances relevant to the establishment of necessity. As in this case, expert opinions often will be necessary in order to establish that any legal or physical barriers cannot or are exceedingly unlikely to be overcome. Although some degree of speculation is inherent in the assessment of such future outcomes, this is a question of the credibility of the evidence and the weight to be afforded thereto, which are matters that we entrust to the discretion of the fact-finder.

We do not intend to dilute or diminish the rigors of the "strict necessity" standard. Nor do we intend to imply that the presence of one or more, or even all, of the above-listed circumstances automatically establishes strict necessity. These considerations are intended only to guide courts in navigating the "gray area" between sheer impossibility and mere convenience. As the quantity and quality of hurdles obstructing a party's ability to create an alternative means of access mount, so too does a court's prerogative to find that strict necessity has been established.

The Superior Court affirmed the trial court's order denying the Ramondos an easement by necessity based upon the theory that establishing necessity requires proving impossibility of alternative access. *See Bartkowski*, 2018 WL 495213, at *6; Findings, 9/19/2016, at 18. This was error. Accordingly, we reverse the order of the Superior Court, and we remand the matter for further proceedings consistent with this Opinion.

Chief Justice Saylor and Justices Baer and Todd join the opinion.

---

whether the asserted necessity in this matter existed at the time of severance. We note Judge Bowes' suggestion that the steep slope, stream, and flood plain were all present in 1967 when the Teafs subdivided their property. *See Bartkowski*, 2018 WL 495213, at *10 (Bowes, J., dissenting). However, because the present record lacks development on this matter, the existence of necessity at the time of severance remains an appropriate area of inquiry on remand.

Justice Dougherty files a concurring and dissenting opinion.

Justice Mundy files a dissenting opinion in which Justice Donohue joins.

